Sylvia **RHODES**, Appellant,

v.

Armando **TORRES**, Appellee.

No. 14–94–00139–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 22, 1995.

Lynn J. Klement, Angleton, for appellant.

Mary Taylor Henderson, Austin, for appellee.

Before ANDERSON and HUDSON, JJ., and SEARS, J., Sitting by Assignment.

## OPINION

ANDERSON, Justice.

This is an appeal from a summary judgment granted in favor of Armando Torres, a Brazoria County probation officer. Appellant Rhodes, plaintiff below, asserted claims against Torres following her arrest. The trial court granted summary judgment to Torres based on his summary judgment evidence establishing the defense of official immunity which includes the element of good faith. Appellant contends on appeal that a genuine issue of material fact exists as to whether Officer Torres acted in good faith in causing her arrest. We affirm.

### Background Facts

On November 7, 1990, a jury found Sylvia Rhodes guilty of Cruelty to Animals, a Class A misdemeanor, and the jury sentenced her to probation. The terms of probation included a provision that Ms. Rhodes perform, within 12 months, 50 hours of community service for the Brazoria County Society for the Prevention of Cruelty to Animals ("SPCA").

Armando Torres was employed as a probation officer with the Brazoria County Supervisions and Corrections Department. Ms. Rhodes' case was assigned to him. On April 10, 1991, Ms. Lisa Bias of the SPCA complained to Officer Torres that Ms. Rhodes was uncooperative, rude to other persons at the SPCA, and did not want to do any work except fold newspapers. As of that date, Ms. Rhodes had completed only five-and-one-half hours of the required 50 hours of community service.

Officer Torres filed a Report of Probation Violation with Judge James Blackstock on May 3, 1991. The judge issued a summons to Ms. Rhodes and held a hearing on June 3, 1991, which Ms. Rhodes and Officer Torres attended. While there, Ms. Rhodes and Officer Torres agreed that she would perform 15 hours of community service per month to meet her total requirement of fifty hours by the time her probation expired in November, 1991. Officer Torres informed Ms. Rhodes that if she failed to comply with these requirements he would cause another summons to be issued.

On June 18, 1991, Ms. Rhodes came in for her scheduled monthly report. Her community service card showed she had worked only three hours and forty-five minutes since June 3, 1991. Officer Torres again warned her another summons would be issued if she failed to work 10 to 15 hours by her next monthly report.

On August 8, 1991, Officer Torres received a call from Ms. Debbie Nix, the new director at the SPCA. Ms. Nix told Officer Torres that Ms. Rhodes was very uncooperative and did not want to do any work. In late August, Officer Torres received a time card from Ms. Rhodes listing the hours she claimed to have worked at the SPCA. Officer Torres compared the card to one sent to him by the SPCA. Ms. Rhodes' card included dates and times not on the SPCA's time sheet. The SPCA time sheet also included a notation from Ms. Nix suggesting it would be better for Ms. Rhodes to get her community service hours elsewhere.

Officer Torres presented this information to his supervisor, Phillip Silva, and Judge Blackstock. After consultation, Judge Blackstock and Silva indicated to Officer Torres that a motion to revoke was appropriate under the circumstances. Judge Blackstock told Officer Torres to go ahead and file the motion to revoke Ms. Rhodes' probation. Officer Torres filed the motion on September 9, 1991 and Judge Blackstock approved it.

Ms. Rhodes was arrested on September 10, 1991. On the afternoon of her arrest, Officer Torres once again called the SPCA and spoke to Ms. Nix and another employee in an attempt to confirm Ms. Rhodes' claims that she had completed all of her community service at the SPCA. Both told him they had never seen Ms. Rhodes performing any work at the SPCA other than folding newspapers, and that they did not recognize some of the initials on the time card presented to Officer Torres by Ms. Rhodes. Ms. Nix also told Officer Torres that Ms. Rhodes would come to work at hours when there was no work to be done, and that she would simply leave if given a task she did not want to do. Ms. Nix told Officer Torres that Ms. Rhodes had not worked the required number of hours.

On September 18, 1991, the SPCA informed Officer Torres in writing that the reports about Ms. Rhodes were incorrect because the SPCA had not properly recorded all of the times Ms. Rhodes had worked. Subsequently, the motion to revoke was dismissed. Ms. Rhodes then brought suit against Officer Torres and others. Officer Torres filed two motions for summary judgment based on the defenses of official immunity and sovereign immunity. The district court granted summary judgment in favor of Officer Torres on two of the three elements of his defense of official immunity on June 18, 1993, and granted judgment on the third element on November 5, 1993, without addressing sovereign immunity. The claims asserted against Officer Torres were severed from Ms. Rhodes' claims against other defendants on November 5, 1993, and the judgment in favor of Officer Torres became final.

In a single point of error Ms. Rhodes asserts the trial court erred in granting summary judgment for Officer Torres based on his defenses of official and sovereign immunity. We disagree.

### Official Immunity

Official immunity is an affirmative defense.[1] A defendant moving for summary judgement on an affirmative defense must conclusively prove all elements of that defense. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994).

Appellant conceded in the trial court that Officer Torres had met the first and third prongs of the official immunity defense. Thus, the issue in this case is whether or not Officer Torres proved he was performing his duties in good faith in causing the arrest of Ms. Rhodes. Stated differently, did Officer Torres carry the burden placed on him as a movant for summary judgment—the burden of showing there is no genuine issue of material fact related to the good faith element of his defense and that he is entitled to judgment based on his defense of official immunity as a matter of law. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–311 (Tex.1984).

### Good Faith

In *Chambers* the Supreme Court adopted a new test for determining good faith in the context of a police pursuit. The court held that a police officer acts in good faith in a pursuit case if "a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit." *Chambers*, 883 S.W.2d at 656. The Court states that the

---

1. The purpose of the doctrine of official immunity is to protect public officers from civil liability that would otherwise be actionable. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653–654 (Tex.1994).

test is derived substantially from the test that has emerged under federal immunity law for claims of qualified immunity in cases under 42 U.S.C. § 1983. The test under federal immunity law for such claims is as follows:

"[W]e look to whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Swint v. City of Wadley*, 5 F.3d 1435, 1441–42 (11th Cir. 1993).

Unlike *Chambers*, this case does not involve a police pursuit. Accordingly, we believe a reasonable articulation of the test for objective good faith as applied to this case is as follows: a probation officer acts in good faith in causing the arrest of a probationer if a reasonably prudent officer, under the same or similar circumstances, could have believed that causing the arrest of the probationer was lawful in light of clearly established law and the information possessed by the official at the time he filed the motion to revoke the probation. This modified test has elements from the federal test set out in *Swint* which do not appear *per se* in the *Chambers* test. However, since the *Chambers* test was "derived substantially" from the federal test, we believe the modifications we here incorporate into the *Chambers* test for good faith are consistent with, and further the objective nature of, that test because both tests arise from the same foundation.

■ The "could have believed" aspect of this test means that, to be entitled to summary judgment, Officer Torres must prove that a reasonably prudent officer might have believed the appropriate course of action was to file the motion to revoke and cause a capias to be issued for Ms. Rhodes' arrest. *Chambers* 883 S.W.2d at 656–657. He does not have to prove it would have been unreasonable not to file the motion, or that all other reasonably prudent probation officers would have filed a motion to revoke. *Id.* This is a test of objective legal reasonableness, without regard to whether the govern-

ment official involved acted with subjective good faith. *Murillo v. Garza*, 881 S.W.2d 199, 202 (Tex.App.—San Antonio 1994, no writ). Thus, the *Chambers* court rejects the need for a subjective prong within the good faith element of the defense of official immunity.

## The Evidence

In support of the good faith element of his official immunity defense, Officer Torres' summary judgment evidence consists of the affidavits of himself, Judge James Blackstock, Ms. Lisa Bias, and Ms. Debbie Nix. Officer Torres' affidavit reflects:

1. Between November 1990 and March 1991 (five months) Ms. Rhodes time card showed she had completed only five-and-one-half hours of her 50 hours of community service. This was roughly equivalent to one hour per month.

2. Officer Torres was aware of the SPCA's complaints that Ms. Rhodes was rude to others, did not want to do any work except fold newspapers, showed up to work at times when there was no work to be done, and consistently violated the SPCA's policy that persons doing community service work call before coming to determine the availability of work.

3. Officer Torres met with Ms. Rhodes on June 3, 1991, and she agreed to perform 15 hours of community service per month.

4. Officer Torres met with Ms. Rhodes on June 18, 1991, and she had performed only three hours and forty-five minutes of work since June 3, 1991; Officer Torres told Ms. Rhodes she would have to complete 10–15 more hours by her next visit or a summons would be issued.

5. Officer Torres was aware the time sheet Ms. Rhodes gave him did not match the time sheet sent to him by the SPCA.

6. Officer Torres presented the information in his possession to his supervisor, Philip Silva and Judge Blackstock to get their recommendation.

7. On the day of Ms. Rhodes' arrest, Officer Torres called the SPCA and spoke with Ms. Nix and another employee, both of whom informed Officer Torres they had never seen Ms. Rhodes performing any work at the SPCA other than folding newspapers, and they did not recognize some of the initials on the time card Ms. Rhodes had given to Officer Torres.

8. Officer Torres did not learn of the SPCA's error until after September 18, 1991.

Judge Blackstock's affidavit states:

1. Officer Torres reported to him that a comparison of Ms. Rhodes' community service time card to the time sheet provided by the SPCA revealed the dates and times Ms. Rhodes was claiming to work were not reflected on the SPCA's time sheet.

2. Officer Torres informed him of Ms. Rhodes' rude and uncooperative behavior at the SPCA.

3. He indicated to Officer Torres that a motion to revoke Ms. Rhodes' probation would be appropriate under the circumstances reported by Officer Torres.

Ms. Lisa Bias' affidavit states:

1. Ms. Rhodes would refuse to perform a task assigned to her, and would leave if given a job other than folding newspapers.

2. Ms. Rhodes was rude and uncooperative.

3. She complained about Ms. Rhodes' behavior on at least two occasions to Officer Torres.

Ms. Debbie Nix's affidavit likewise states:

1. Ms. Rhodes was required to record her hours of service at the SPCA, and to have the record of those hours signed by a member of the staff.

2. On several occasions entries were made for a certain date, with no reference to actual hours worked.

3. After Ms. Rhodes stopped doing community service work, Ms. Nix reviewed the SPCA's records. The records re-flected the required 50 hours had not been completed.

4. Ms. Nix sent a copy of the SPCA's records to Officer Torres.

5. Ms. Nix told Officer Torres that Ms. Rhodes was sometimes rude, difficult to motivate, and did not want to perform certain duties.

■ Officer Torres' summary judgement evidence establishes the good faith element of his defense. His evidence demonstrates he had every reason to believe Ms. Rhodes had not completed her community service hours and would not do so before the end of her 12 month probation. He reviewed the conflicting documents sent him by the SPCA and Ms. Rhodes and contacted the senior director of the SPCA. The only information he could verify was that Ms. Rhodes had not completed her community service hours and was not working the agreed number of hours per month. A reasonable officer in his position could have believed Ms. Rhodes was falsifying her time card to reflect completion of her hours. Consistent with that belief he consulted with his supervisor and the sentencing judge, both of whom indicated to him a motion to revoke was proper under the circumstances. However, Officer Torres did not just initiate the procedures which led to the arrest of Ms. Rhodes, and then abandon her case. Instead, immediately following the arrest on September 10, 1991, he made an additional check with the SPCA to confirm Ms. Rhodes' claims that she had completed all of her hours of community service. During that conversation, Ms. Debbie Nix stated that Ms. Rhodes had only completed about 15 hours of community service at the SPCA.

■ Based on the *Chambers* objective good faith test, as modified for purposes of this case, Officer Torres has demonstrated that a reasonably prudent probation officer could have believed that causing the arrest of Ms. Rhodes was lawful in light of clearly established law and the information he possessed at the time he filed the motion to revoke her probation. Our conclusion concerning Officer Torres' good faith is buttressed by note 7 in *Chambers* which describes the "could have believed" aspect of the good faith test as "analogous to the abuse

of discretion standard of review utilized by an appellate court when reviewing certain trial court rulings: an abuse of discretion is shown only if the trial court could not have reasonably reached the decision in question." (citation omitted). *Chambers,* 883 S.W.2d at 657, n. 7. Viewing his actions from this perspective, Officer Torres' decision to file a motion to revoke probation was reasonable in light of the verifiable information before him at the time.

■ To controvert the officer's summary judgment proof on good faith, the plaintiff must do more than show that a reasonably prudent officer could have decided to delay the motion to revoke; the plaintiff must show that no reasonable person in Officer Torres' position could have thought the facts were such that they justified his acts. *Chambers* 883 S.W.2d at 657 (citing *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir. 1993)). In short, the plaintiff must meaningfully contradict the objective reasonableness evidence adduced at summary judgment by the defendant.

In Ms. Rhodes response to Officer Torres' Second Motion For Summary Judgment, she submitted excerpts from Officer Torres' deposition, excerpts of departmental guidelines attached as exhibits to the deposition materials, and her own affidavit. The gravamen of Ms. Rhodes' response is twofold: (1) Officer Torres violated departmental policies and procedures, and (2) Officer Torres could have used less drastic measures to resolve the problem, such as holding the arrest warrant in the probationer's file for up to 30 days to resolve any problems.

■ The fact that Officer Torres failed to follow the nonmandatory guidelines in the departmental manual does not establish bad faith. Indeed, Officer Torres, in deciding to depart from the guidelines and proceed with the arrest was engaging in a discretionary act, inasmuch as he could decide to either act on the information he had, or postpone the arrest and await further developments.[2] The policy manual outlines a procedure to be followed, *if possible,* when the decision to file

a motion to revoke has been made; the result is a grant of discretionary power to the probation officer to decide that certain cases justify departure from the established policy. Because Ms. Rhodes has conceded, in *her* brief and in her response to the second motion for summary judgment, that the "issue in this case comes down to whether Torres acted in good faith" when he moved to revoke her probation, questions concerning Officer Torres' discretionary acts in connection with the departmental guidelines are not presented for review.

In similar vein, Ms. Rhodes argues Officer Torres failed to precede the filing of the motion with a genuine and thorough attempt to reach an acceptable alternative. On this issue the departmental manual states that the basic thrust of the manual obliges every probation officer to precede a recommendation to revoke probation with a genuine and thorough attempt to reach an acceptable alternative.

■ The affidavits contained in Officer Torres' Motion for Summary Judgment contain ample proof Torres made a genuine and thorough attempt to reach an acceptable alternative to revoking her probation by checking and rechecking with the SPCA, prior to taking any action, to determine whether or not she had completed her hours of service. Based on the information before him prior to the arrest, he came to the not unreasonable conclusion Ms. Rhodes had failed to comply with the terms of her probation, despite his efforts to impress upon her, at the June 3, 1991 hearing before Judge Blackstock and again on June 18 during her scheduled report, the importance of moving ahead with completion of her community service hours, and despite his warnings about the consequences of her failure to do so.

■ Ms. Rhodes further alleges Officer Torres failed to hold up the arrest warrant for thirty days in order to resolve the problem with a "special condition of probation." The policy manual states "[i]f the violations involve ... any special condition of proba-

---

**2.** If an action involves personal deliberation, decision and judgment, it is discretionary; actions which require obedience to orders or the perfor-

mance of a duty to which the actor has no choice, are ministerial. *Chambers,* 883 S.W.2d at 654.

tion, ... the warrant *can* be held in the file for up to 30 days to resolve any problems". (emphasis ours). A plain reading of the manual demonstrates Torres' decision not to hold her warrant for up to thirty days based upon a problem involving a special condition of probation was discretionary.

 Finally, Ms. Rhodes contends Officer Torres gave her conflicting instructions and that at no time prior to her arrest was she permitted to present evidence she had completed her community service. Assuming Officer Torres gave Ms. Rhodes conflicting instructions, at worst such act amounts to negligence, not bad faith.[3] As for permitting her a chance to present evidence she had completed her community service, we again apply the standard of a reasonable person in Officer Torres' position. The information before him at the time the motion to revoke was prepared was that Ms. Rhodes had not completed her hours and was violating the terms of her probation because she was not working the agreed number of hours per month. He acted on that information and appellant has made no showing that his act of revoking her probation in light of the extant information without providing her a chance to refute his information was anything other than the act of a reasonable probation officer. Indeed, as noted, contemporaneously with Ms. Rhodes' arrest on September 10, 1991, Officer Torres confirmed with Ms. Nix at the SPCA that Ms. Rhodes' was woefully deficient in her hours.

Defendants moving for summary judgment must expressly present and conclusively prove all elements of their defense as a matter of law; there can be no genuine issues of material fact. *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984). We have established that Officer Torres satisfied the objective test for good faith through the evidence submitted in support of his summary judgment motion.[4] We have also articulated the standard by which Ms. Rhodes' response must be measured. She failed to present any evidence, in order to controvert his summary judgment proof on objective good faith, that no reasonable person in Officer Torres position could have thought that the facts were such that they justified revocation of her probation. Indulging every reasonable inference in appellant's favor, we find Ms. Rhodes failed to establish any fact issue regarding the objective good faith element of Officer Torres's defense. The trial court did not err in granting summary judgment for Officer Torres based on the defense of official immunity.

### Sovereign Immunity

 Officer Torres also raised the defense of sovereign immunity in both of his motions for summary judgment, and both parties address the issue on appeal. The trial court properly based its judgment on official immunity and did not address sovereign immunity. Only a governmental unit of the State of Texas may invoke the limitations or protection of the doctrine of sovereign immunity. That defense does not inure to the benefit of any individual. *Nissen Corporation v. Layman*, 651 S.W.2d 824, 825 (Tex. App.—Houston [1st Dist.] 1983, no writ). Therefore, Officer Torres may not invoke the doctrine as a defense.

We conclude Officer Torres established all elements of his affirmative defense of official immunity, and that Ms. Rhodes did not raise a fact issue regarding that defense. We overrule Ms. Rhodes' single point of error and affirm the judgment.

---

3. The complex policy judgment reflected by the doctrine of official immunity, if it is to mean anything, protects officers from suit, even if they are negligent. *Chambers* 883 S.W.2d at 655.

4. Officer Torres' good faith is the only issue because Ms. Rhodes conceded that Officer Torres was performing discretionary duties within the scope of his authority, the only other elements of the official immunity defense.