**CITY OF PHARR, Appellant,**

v.

**Cesar RUIZ, et al., Appellees.**

**No. 13–96–430–CV.**

Court of Appeals of Texas, Corpus Christi.

April 3, 1997.

---

Jeffrey D. Roerig, Ernest W. Grumbles, Roerig, Oliveira & Fisher, Brownsville, Michael Zanca, McAllen, for appellant.

Michael J. Garza, Dori Contreras Garza, McAllen, Adam Poncio Cerda, Garriga & Poncio, San Antonio, for appellees.

Before DORSEY, CHAVEZ and RODRIGUEZ, JJ.

## OPINION

RODRIGUEZ, Justice.

Appellees sued the City of Pharr ("the City") under section 101.001 of the Texas Civil Practice & Remedies Code ("Tort Claims Act") for injuries resulting from a high-speed police chase. The City moved for partial summary judgment claiming sovereign immunity based on its police officers' official immunity. Appellees argued on the grounds that fact issues exist as to whether the actions of the officers were discretionary and performed in good faith. The trial court denied the City's motion for summary judgment. We affirm.

## BACKGROUND

While on evening patrol duty, Officer David Castillo of the City of Pharr Police Department was alerted by radio dispatch to a suspicious red pickup truck driving without its headlights turned on. Officer Castillo spotted the truck moving at a high rate of speed. As he approached, the truck sped away and ran a stop sign. After Castillo pursued with overhead lights and siren engaged, the truck finally stopped along the side of the road. As Officer Castillo stood outside his patrol car, the truck sped away. Officer Castillo again pursued the truck along with three other patrol units. All had their lights and sirens engaged.

During the pursuit, Officers Castillo and Lopez heard over the radio that the driver of the truck had tried to ram an officer's patrol car. They also observed the truck run two stop signs and a red light at a high rate of speed. As the truck turned to enter a private parking lot, it collided with a car driven

by appellees. All of the occupants in the car were injured.

Appellees sued the City alleging that the officers negligently breached their duty to drive with due regard for the safety of all persons using the road, and, pursuant to the Tort Claims Act, failed to act in good faith by believing that the need to apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit.

## JURISDICTION

■ Under Texas procedure, appeals are allowed only from final orders or judgments. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992); *North East Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 895 (Tex.1966); *Cameron County v. Alvarado*, 900 S.W.2d 874, 878 (Tex.App.—Corpus Christi 1995, writ dism'd w.o.j.). Unless a statute specifically authorizes an interlocutory appeal, Texas appellate courts have jurisdiction only over final judgments. *Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex.1985) (orig. proceeding); *Aldridge*, 400 S.W.2d at 895. Section 51.014 of the Texas Civil Practice & Remedies Code specifically allows appeal of various interlocutory orders, including an order that "denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state[.]" TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(5) (Vernon Supp.1997).

■ In the present case, the City of Pharr moved for summary judgment claiming sovereign immunity based on its officers' official immunity. The supreme court has held that a city may rely on section 51.014(5) to appeal the denial of summary judgment based on sovereign immunity through its employees' qualified or official immunity. *City of Beverly Hills v. Guevara*, 904 S.W.2d 655, 656 (Tex.1995)(where plaintiff sued City but not City's employee, section 51.014(5) applied to City's claim of sovereign immunity through employee's official immunity). We therefore have jurisdiction over the City's interlocutory appeal.

## STANDARD OF REVIEW

■ When an appellate court reviews a trial court's denial of summary judgment, it applies the standards mandated by the Texas Supreme Court. They are:

1. The movant for summary judgment has the burden of showing there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.
2. In deciding whether a disputed material fact issue exists, we accept as true evidence favorable to the non-movant.
3. We indulge in every reasonable inference and resolve any doubts in the non-movant's favor.

*See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A defendant who moves for summary judgment must show that the plaintiff has no cause of action. A defendant may meet this burden by either 1) disproving at least one essential element of each theory of recovery, or 2) conclusively proving all elements of an affirmative defense. *Mitchell v. City of Dallas*, 855 S.W.2d 741, 748 (Tex.App.—Dallas 1993), *aff'd*, 870 S.W.2d 21 (Tex.1994). If the movant's motion and summary judgment proof facially establish his right to judgment as a matter of law, then the burden shifts to the non-movant to raise fact issues precluding summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

In this case, the City asserted governmental immunity, *via* official immunity, as an affirmative defense and, therefore, had the burden to conclusively prove all of the essential elements of this defense. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). No disputed question of material fact can remain on the affirmative defense. *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex.1990).

## IMMUNITY

■ Police officers are entitled to official immunity from suits arising from the performance of their 1) discretionary duties 2) in good faith as long as they are 3) acting within the scope of their authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994); *Alvarado*, 900 S.W.2d at 879.

Where an employee possesses official immunity, the governmental entity does not have respondeat superior liability under the Tort Claims Act. *DeWitt v. Harris County,* 904 S.W.2d 650, 654 (Tex.1995). Thus, in order to prevail on its governmental immunity claim, the City had to establish that its officers were officially immune from liability.

In response to the City's motion for summary judgment, appellees argued that fact issues remain as to (1) whether the police officers' actions were discretionary in light of the department's policy on high-speed chases, and (2) whether the officers acted in good faith.[1]

**A.  Discretionary acts.**

■■■ When considering whether a government employee's actions were discretionary or ministerial, a court's inquiry is not whether the officer had discretion to do an allegedly wrongful act, but whether the officer was performing a discretionary function. *Chambers,* 883 S.W.2d at 653. The purpose of the doctrine of official immunity is to protect public officers from civil liability for conduct that would otherwise be actionable. *Id.* at 653–54.

■■■  Ministerial acts are those:

[w]here the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment ... but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial.

*Id.* at 654 (quoting *Rains v. Simpson,* 50 Tex. 495, 501 (1878)). If an action involves personal deliberation, decision and judgment, it is discretionary; actions which require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial. *Id.*

■■■ In the present case, the police department had specific pursuit guidelines, which provided, in relevant part, as follows:

**SECTION 3.   POLICY**

A.  An officer shall not engage in high-speed pursuit whenever it reasonably appears that the potential harm to persons or property arising from such pursuit outweigh the potential harm threatened by the escaping offender. In the absence of an outweighing danger to persons and property, an officer shall not engage in high-speed pursuit whenever it reasonably appears that apprehension of the escaping offender by other means is likely. In determining whether to engage in pursuit, an officer may consider all relevant factors....

. . . .

D.  An officer shall notify his supervisor upon engaging in any high-speed pursuit, unless to do so would unreasonably delay the initiation of such pursuit.

. . . .

**SECTION 4.   PROCEDURE**

A.  When not coordinated by a dispatcher or supervisor, the officer in the primary pursuing unit of the high-speed pursuit shall direct the pursuit by both his unit and others.

. . . .

C.  Only the primary pursuing unit shall engage in high-speed pursuit, unless a supervisor authorizes additional units to engage in the pursuit.

. . . .

F.  Except when directed otherwise by a supervising officer, the primary pursuing unit of a high-speed pursuit may at any time abandon that pursuit in the interest of safety; that unit and/or the base station shall immediately communicate that decision to all other units involved. Upon receiving such communication, all units shall abandon that high-speed pursuit.

Twelve months after that policy came into effect, Police Chief Leo Saldana issued an "Inter Office Memo" addressing "General Order # 1 Use of Departmental Vehicles."

---

1.  Appellees do not dispute that the officers were acting in the course and scope of their official duties as public employees.

The memo provided, in its entirety, as follows:

### YOUR ATTENTION TO THIS MATTER IS REQUIRED

EFFECTIVE IMMEDIATELY WHEN RESPONDING TO AN EMERGENCY, ALL PERSONNEL WILL ONLY BE ALLOWED TO EXCEED THE SPEED LIMIT BY (10) MILES AND ONLY WITH OVERHEAD LIGHTS AND SIREN ON.

*ALL PURSUITS ORIGINATING IN OUR CITY MUST BE AUTHORIZED BY A SUPERVISOR.*

ALL PERSONNEL WILL HAVE TO STOP AT ALL TRAFFIC CONTROL DEVICES BEFORE PROCEEDING FORWARD *AND THEN ONLY WHEN SAFE.*

PERSONNEL WILL NOT BE ALLOWED TO PARTICIPATE ON ANY OUT OF THE CITY LIMITS PURSUITS.

A COPY OF THIS GENERAL ORDER SHOULD BE PLACED IN YOUR PERSONNEL POLICIES AND PROCEDURES MANUAL, THE ORIGINAL WILL BE KEPT IN YOUR PERSONNEL FILE.

Appellees argued that Saldana's memo removed all discretion from a police officer's decision to initiate a pursuit. According to appellees, this policy prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion, and that accordingly, the initiation of a high-speed chase is a ministerial act. Unless the chase officers first call the supervisor on duty for permission, they argue, the officers have no choice but not to pursue. Appellees argued that Gabriel Avendaño, a former Pharr police officer, confirmed this interpretation of the department's policy; however, the record before us fails to reveal such an interpretation by Avendaño in the limited deposition transcripts.

Chief Saldana, on the other hand, swore by affidavit that his memorandum means, and has been interpreted within the department to mean, that

the supervisor on duty at a given time when a pursuit appears imminent has the authority and the discretion to order that the pursuit be disengaged and/or discontinued. Otherwise, this provision and policy attached means that each individual officer and in particular, the initiating officer, has the sole discretion in originating a pursuit until and unless the supervisor orders him to disengage.

Officer Castillo, the first officer to make contact with the fleeing suspect, stated in his deposition that this was also his understanding of the memo. When asked why he had not attempted to contact his supervisor for permission to chase the perpetrator, he responded:

We don't—I was in pursuit. My—my main concern was to drive safely, make sure nobody got in my way, that I wouldn't hit anything, and be—be listening to the radio at the same time, just in case my supervisor came on and said disregard.

Officer Castillo confirmed that his supervisor invariably listens to the radio and that unless a supervisor orders an officer to disengage, the chase is authorized.

We conclude that when the two policies are read together, and the interpretations of the policy by the police chief and officers are considered, it becomes apparent that a Pharr Police Department officer's decision to initiate a high-speed chase is discretionary. This conclusion is in keeping with the Texas Supreme Court's reasoning in *Chambers* where, addressing a police officer's dilemma, the court reasoned that

[t]he decision to pursue a particular suspect will fundamentally involve the officer's discretion, because the officer must, in the first instance, elect whether to undertake pursuit. Beyond the initial decision to engage in the chase, a high speed pursuit involves the officer's discretion on a number of levels, including, which route should be followed, at what speed, should back-up be called for, and how closely should the fleeing vehicle be pursued.

*Chambers,* 883 S.W.2d at 655 (holding that police officer's engaging in a high-speed

chase was a discretionary act). We conclude that the City presented competent summary judgment proof that Officer Castillo was performing a discretionary function, and further conclude that appellees failed to rebut the City's proof by showing the existence of any material fact on this issue.

## B. Good faith.

In *Chambers*, the supreme court stated that a police officer acts in good faith in a high speed chase if

a reasonably prudent officer, under the same or similar circumstances, *could have believed* that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit.

■ *Chambers*, 883 S.W.2d at 656 (emphasis added). The "could have believed" aspect of the good faith test means that, in order to be entitled to summary judgment, a police officer must prove that a reasonably prudent officer might have believed that the pursuit should have been continued. *Id.* at 656–57. The officer need not prove that it would have been unreasonable to stop the pursuit or that all reasonably prudent officers would have continued the pursuit. *Id.* at 657. Immunity should be recognized if officers of reasonable competence could disagree on this issue. *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)); see *Schultea v. Wood*, 27 F.3d 1112, 1120 (5th Cir.1994); *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992).

■ The City's summary judgment evidence established that the perpetrator sped away after being pulled over for traffic violations, and subsequently ran several stop signs and red lights in a continued attempt to evade arrest. The City also showed that the officers involved in the chase heard, on their police radios, that the driver tried to ram a patrol car. The officers thus reasonably believed that the driver committed attempted aggravated assault, a first degree felony. TEX. PENAL CODE ANN. § 22.02 (Vernon 1994).

Police Chief Saldana's affidavit stated that, given the circumstances that Officer Castillo faced, it was his opinion that "a reasonably prudent officer could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit."

Patrol Sergeant Guadalupe Salinas' affidavit stated that he monitored the entire pursuit and never believed that it was necessary to call off the pursuit. Salinas opined that a reasonable and prudent officer would have believed that under those circumstances, the immediate need to apprehend the suspect outweighed the risk of harm to the public in continuing the pursuit.

Finally, the State presented the affidavit of Sherwood Hamilton, a former highway patrolman with the Texas Department of Public Safety and an expert in law enforcement emergency driving and accident investigation. After reviewing the field notes, Hamilton stated that the officers involved in this pursuit had every reason to believe that the driver would continue his dangerous driving, and that after the suspect tried to ram a police unit, the officers had reason to believe that a felony had been committed. He concluded that "I and any prudent officer under the same or similar circumstances would have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the chase."

Based on this summary judgment proof, we conclude that the City met its burden of showing that a reasonable officer in the same or similar circumstances might have responded to the emergency in the same manner.

■ Once the defendant/movant has met his burden of proof on good faith, the plaintiff/non-movant may attempt to controvert the existence of the defendant's good faith. *Texas Dep't of Public Safety v. Tanner*, 928 S.W.2d 731, 736 (Tex.App.—San Antonio 1996, no writ). But to avoid a summary judgment based on official immunity, the plaintiff carries a much higher burden of proof. *Id.* In order to raise a fact issue, a plaintiff is required to prove that "no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." *Chambers*, 883 S.W.2d at 657. "[W]e look to whether a

reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Id.* at 656. Upon this controverting proof, the question of good faith must go to a jury to resolve the fact issue. *Id.*

■ As controverting proof, the non-movants (appellees) offered the affidavit of Earl R. Morris, the Deputy Division Director of Law Enforcement and Technical Services for the Utah Department of Public Safety, who was the former Bureau Chief of the Standards and Inservice Division at the Utah Law Enforcement Training Academy. Morris was a member of the "IAD-LEST/NHTSA" Driver Training Task Force, a research associate and curriculum writer of the National Law Enforcement Driver Training Reference Guide, the author of a book entitled "Emergency Vehicle Operations," and an Executive Board Member of the National Association of Professional Law Enforcement Emergency Vehicle Response Trainers. Morris stated that he reviewed the deposition testimony of the four chase officers, the accident report, the department's policy, and maps and photographs of the area. He assessed that (1) all four officers were negligent in their pursuit, (2) the City was negligent in failing to properly train its officers and properly monitor the pursuit in question, (3) the training given to Officer Castillo was grossly inadequate, (4) Officer Castillo should have recognized the need to terminate the pursuit because the hazards posed to the public outweighed the need to apprehend the suspect, and (5) the failure to "adhere to the promulgated policy ... indicates a lack of reasonableness" and because an officer only acts in good faith if that officer acts reasonably and prudently, these officers demonstrated a lack of good faith. He concluded that "a reasonable official could not have believed that officers [sic] conduct was reasonable and acceptable as demonstrated by the promulgated policy which the officers ignored." By accepting as true evidence favorable to the nonmovant, and resolving any doubts in favor of the non-movant, we conclude that Morris' testimony sufficiently controverts the City's proof of good faith. *See Alvarado,* 900 S.W.2d at 881

(suggesting that the same expert's identical statement would have been sufficient to controvert defendant's summary judgment proof of good faith).

Because appellees' controverting evidence is sufficient to raise a fact question on the issue of good faith, the trial court did not err in denying the City's motion for summary judgment. Point of error one is overruled.

Accordingly, the trial court's denial of summary judgment is AFFIRMED.