Coy Allen BROWN, joined by his parents, Ken Brown and Sue Brown, individually and as next friends, Appellants,

v.

Gary Stephen ENER and Harris County, Appellees.

No. 14–97–00673–CV

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 28, 1998.

Richard N. Countiss, D.M. Freedman, Houston, for appellants.

Robert E. Lapin, Ronald Wardell, Frank E. Sanders, Houston, for appellees.

Before Justices ANDERSON, EDELMAN, and SEARS.*

## OPINION

ROSS A. SEARS, Senior Justice, (Assigned).

Coy Allen Brown and his parents, as next friends, (collectively Brown) appeal from a summary judgment in favor of deputy constable Gary Stephen Ener (Deputy Ener) and Harris County (County). The trial court granted summary judgment on the grounds of Deputy Ener's official immunity and the County's sovereign immunity in connection with a high-speed police chase in which Brown was injured. In two points of error, Brown contends: (1) Deputy Ener did not prove as a matter of law that he was protected by official immunity for his negligence in the automobile collision, and (2) the County did not prove that it is protected by sovereign immunity because Deputy Ener was not immune. We reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On Saturday night, July 9, 1994, at about 12:40 a.m., Deputy Ener was driving a marked Harris County patrol car, going west on FM 2920, about nine miles east of Tomball. The weather was clear, and the intersection of FM 2920 and Rhodes Road was well-lighted. FM 2920 is four lanes wide, two lanes for the east bound traffic and two lanes for the west bound traffic. The road was dry, made of asphalt, and was level and straight. The speed limit on FM 2920 was fifty-five miles per hour on that date, and the intersection of FM 2920 and Rhodes Road is controlled by a traffic light. Deputy Ener had one passenger, Thomas, sitting in the passenger seat of the patrol car. Thomas was the vice president and security officer for Bridgestone Subdivision. Deputy Ener received a radio call from Thomas who asked Deputy Ener to pick him up and take him along on routine patrol under the County's "ride-along" program. However, Deputy Ener did not follow department policy, which requires all deputies to obtain specific permission before carrying civilian passengers.

Deputy Ener observed a speeding car eastbound on FM 2920, going 71 miles per hour in a fifty-five miles per hour zone. Deputy Ener testified he made a U-turn, turned on his overhead emergency lights, engaged his siren, and started to chase the unknown speeding car. Deputy Ener stated he observed the speeder about "a block" ahead of him enter the intersection of FM 2920 and Rhodes on the green light. Deputy Ener followed the speeder into the intersection at a speed estimated to be "at least seventy" miles per hour. The front of Brown's car struck the right side of Deputy Ener's patrol car, knocked the patrol car sideways across the intersection where it hit Roarke's car which was stopped for the red light in the westbound lane.

In a deposition taken seven months before he made his affidavit, Deputy Ener testified he "blacked out" and did not remember if the light was still green when he entered the intersection. Deputy Ener did not remember how fast his patrol car was going or which lane his patrol car was in when he entered the intersection. Although he did not remember the events starting when his car was about a block from the intersection, he was certain his siren and his overhead emergency lights were on because he engaged them when he started to chase the speeder. Brown testified he did not hear the siren but did not say whether or not Deputy Ener's emergency lights were on. Brown also testified that he did not hear Deputy Ener sound any horn.

The police report made by Deputy Constable Seibert lists seven witnesses to the accident, but there are no affidavits in the record from any of them. Nor does the record contain any testimony from passenger Thomas or the other bystander, Roarke. Deputy Ener and Harris County filed their motion for summary judgment alleging Deputy Ener was entitled to official immunity because he was (1) acting in his official capacity, (2) performing a discretionary function, and (3)

* Senior Justice Sears sitting by assignment.

acting in good faith. As summary judgment proof, Deputy Ener and the County furnished the affidavits of Deputy Ener and two senior police officers. Brown responded alleging Deputy Ener was performing a ministerial function and was not acting in good faith. In support of his response, Brown furnished his and Charles McDaniel's affidavits and the deposition of Deputy Ener taken in another suit involving this accident.

The trial court granted Deputy Ener's and the County's motion for summary judgment without specifying the grounds. On appeal, Brown contends Deputy Ener is not entitled to official immunity because he did not conclusively prove he was (1) performing a discretionary function or (2) acting in good faith. Finally, Brown contends that because Deputy Ener is not immune, the County is not immune.

## II. STANDARD OF REVIEW

The standard we follow when reviewing a summary judgment is well-rehearsed. Summary judgment is proper only when the movant establishes there are no genuine issues of material fact and proves he is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c). To be entitled to summary judgment, a defendant must either (1) conclusively negate at least one essential element of each of the plaintiff's causes of action, or (2) conclusively establish each element of an affirmative defense to each claim. *See American Tobacco Co., Inc. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997). In deciding whether there exists a disputed fact issue precluding summary judgment, we treat evidence favorable to the nonmovant as true and indulge all reasonable inferences in the nonmovant's favor. *See id.*

## III. Analysis

■ The County's motion for summary judgment is based on the affirmative defense of official immunity. Under Texas law, a defendant seeking a summary judgment on an affirmative defense of immunity must prove, without dispute and as a matter of law, that when the event in question occurred, he or she was: (1) performing a discretionary function, (2) acting in good faith, and (3) acting within the scope of authority. *See City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). If any element is not proved as a matter of law or is factual disputed, the summary judgment must be denied. *See id.* However, if the officer is entitled to official immunity, then the governmental entity employing him retains its sovereign immunity.[1] *See DeWitt v. Harris County,* 904 S.W.2d 650, 653 (Tex. 1995) (holding that government's immunity is contingent on the officer's immunity).

Brown concedes that Deputy Ener was acting within the scope of his authority at the time of the accident. However, Brown contends Deputy Ener failed to prove as a matter of law that he was performing a discretionary function or that he was acting in good faith. We will address each argument in turn.

### Discretionary Duty

■ We must first determine whether Deputy Ener's actions were discretionary or mandatory. This distinction is important because under the doctrine of official immunity, public officers are protected from civil liability for conduct that would otherwise be actionable if they were not performing a discretionary function. *See Chambers,* 883 S.W.2d at 653. To make this determination, our inquiry is not whether the officer had discretion to do an allegedly wrongful act, but whether the officer was performing a discretionary function. *See id.* Acts are discretionary if they involve the exercise of personal deliberation, discretion, or judgment. *See id.* at 654. Whereas, acts are mandatory if they require obedience to orders or the performance of a duty about which the actor has no choice. *See id.*

A departmental policy was at issue in *City of Pharr v. Ruiz,* 944 S.W.2d 709 (Tex.App.—Corpus Christi 1997, no writ). In *Pharr,* the issue before the court was whether a departmental policy prevented an officer from performing a discretionary function. As a

---

1. Official immunity protects individual officials from liability; sovereign immunity protects governmental entities from liability. *See Chambers,* 883 S.W.2d at 653.

threshold question, the court focused on whether a memo from the chief of police changed a nonmandatory or discretionary policy to a mandatory policy. *See id.* at 713–14. The summary judgment proof consisted of an affidavit from the chief of police which stated the memo was not intended to prevent the officers from using their discretion to initiate a pursuit. *See id.* at 714. Relying on the chief's affidavit, the court held that a nonmandatory policy did not prevent the officer from performing a discretionary function. Based on this analysis, a determination that the policy was mandatory would have been dispositive.

■ Brown contends the policy of the Harris County Constable's Office forbids Deputy Ener from commencing an emergency pursuit while carrying a civilian passenger in his car; therefore, Deputy Ener had no discretion to engage in any chase. In his deposition, Deputy Ener testified the County has a policy against emergency pursuits when the officer has a civilian passenger. Deputy Ener also testified he was suspended because Thomas was a passenger in his patrol car at the time he began his chase of the speeder, in violation of precinct policy.

Other than Deputy Ener's direct testimony to this effect, the record does not contain any other proof of this particular policy. Unlike the City of Pharr, Deputy Ener presented no summary judgment proof that this policy, regarding civilians and high speed pursuits, was not mandatory.[2] Because this is a summary judgment, all evidence and inferences are viewed in the light most favorable to the nonmovant. *See American Tobacco,* 951 S.W.2d at 425. If it was mandatory, which we must assume it was, then it would require the performance of a duty about which the Deputy Ener had no choice, or in other words, Deputy Ener acted against department mandates and performed an act, a high speed chase, in which he had no discretion.

Accordingly, Deputy Ener has not proved he was performing a discretionary function as a matter of law.

## Good Faith

In *City of Lancaster v. Chambers,* the Texas Supreme Court adopted the following balancing test to determine good faith in pursuit cases. " [A]n officer acts in good faith in a pursuit case if: a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing [rather than terminating] the pursuit." *Chambers,* 883 S.W.2d at 656. The test of good faith immunity is one of objective legal reasonableness, without regard to whether the government official involved acted with subjective good faith. *See id.* Good faith depends on how a reasonably prudent officer could have assessed both the need to which an officer responds and the risk of the officer's course of action, based on the officer's perception of the facts at the time of the event. *See Wadewitz v. Montgomery,* 951 S.W.2d 464, 467 (Tex.1997). Thus, the good faith of an officer is not assessed at a specific instance, but must be continually assessed based on an objective weighing of the need versus the risk as the circumstances change during the pursuit.

The Texas Supreme Court recently clarified the summary judgment burden for a defendant police officer claiming official immunity. *See id.* at 466–67. An expert witness's conclusory statement that a reasonable officer *could or could not have taken* some action will neither establish good faith at the summary judgment stage nor raise a fact issue to defeat summary judgment. *See id.* at 466. Instead, expert testimony on good faith must address what a reasonable officer *could have believed* under the circumstances and must be substantiated with reference to

2. Deputy Deputy Ener also cites *Rhodes v. Torres* for the proposition that mandatory departmental guidelines do not prevent an officer from satisfying the discretionary function prong of the defense of official immunity. 901 S.W.2d 794 (Tex. App.—Hous. [14th Dist.] 1995, no writ). This reading, however, is incorrect for two reasons. In *Rhodes,* the only issue before this court was

whether the good faith prong of the official immunity test was satisfied, not the discretionary prong. *See id.* at 798–800. Second, regardless of the prong at issue, the particular policy was in fact not mandatory but only to be followed if possible. Thus, we held a nonmandatory policy was no evidence of the officer's good faith. *See id.* at 800.

each aspect of the *Chambers* balancing test. *See id.* at 467 (citing *Chambers*, 883 S.W.2d at 656–57).

In *Wadewitz*, the court further explained the "need" versus the "risk" factors of the good faith test. The need aspect of the test refers to the urgency of the circumstances requiring police intervention. *See id.* In the context of an emergency response, need is determined by factors such as the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and what alternative courses of action, if any, are available to achieve a comparable result. *See id.* The risk aspect of good faith, on the other hand, refers to the countervailing public safety concerns: the nature and severity of harm that the officer's actions could cause, including injuries to bystanders and the possibility that an accident would prevent the officer from reaching the scene of the emergency, the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer. *See id.* A court must then balance the need to which an officer responds against the risk of the officer's course of action, based on the officer's perception of the facts at the time of the event. *See id.* at 466.

■ To establish good faith, Deputy Ener relied on his own affidavit and the affidavits of two senior officers, Captain Jim Sumner and Assistant Chief Ric Sadler. Deputy Ener described the circumstances in which he initiated the pursuit of the speeder and his reasons for starting the high-speed chase. As to his good faith in engaging in the chase, Deputy Ener stated:

> As I approached the intersection, I had my overhead lights and siren on and the road ahead of me was clear except for the speeding car I was pursuing. At this time I believed the speeder was acting recklessly and was a danger and that I should definitely apprehend him. I believed that the need to apprehend the speeder outweighed any risk to the public posed in doing so. Based on what I knew at the time, everything I could observe, the fact I was driving a marked police car with over-
> head lights and siren on I believe my pursuit was reasonable and I believed it was necessary in order to apprehend the speeder. I believed the speeder posed a high and serious risk of danger to the public. I further believed that the need to apprehend this individual outweighed any risk of danger to the public that attempting to do so would create. Unfortunately, the driver of a Ford pickup, Coy Allen Brown, failed to yield right of way to an emergency vehicle and a collision resulted.

> It is part of my duties as a deputy constable driving a patrol vehicle to attempt to stop traffic law violators. I had a very short time to consider the conditions around me and make my decision to attempt to stop the violator and to attempt to go through the intersection. At all times I acted in good faith and believed the risk of danger posed by my attempting to apprehend the violator was low. I activated my overhead lights and siren before beginning the pursuit and had them on at all times up until the collision. In my opinion the need to apprehend the reckless and speeding traffic law violator outweighed any risk of harm to the public and I believe that any reasonably prudent patrol officer would have acted exactly as I did under the same or similar circumstances.

Missing from Deputy Ener's affidavit is what action, if any, he took immediately before he entered the intersection. The parties stipulated and agreed that the deposition of Deputy Ener in a separate lawsuit filed by another party injured in the same accident could be "used" in this case. Accordingly, the deposition was proper summary judgment proof in Brown's response to Deputy Ener's motion for summary judgment. In that deposition, Deputy Ener testified he had no memory of anything that happened one block prior to entering the intersection. He testified that the last thing he remembered prior to the first impact was: "Seeing a green light at the intersection and a car in front of me going through it." The next thing he remembered was his wife coming into the emergency room at the hospital. The deposition was taken May 9, 1996, and

the affidavit submitted with his motion for summary judgment was dated December 10, 1996. The affidavit is silent with respect to Deputy Ener's memory loss, which started about one block from the intersection.

We will now examine Deputy Ener's summary judgment proof with respect to the need to detain the speeder against the risk of his course of action, based on his perception of the facts at the time of the event. Deputy Ener stated he believed the speeder was a "high and dangerous risk to the public," indicating the *need* for the chase was more serious than just a Class C misdemeanor, and the officer's immediate presence was necessary to prevent injury or loss of life. As to the *risk* aspect, Deputy Ener's loss of memory prevents him from explaining the nature and severity of harm that his actions could have caused. Deputy Ener has not submitted proof as to any action he took to check the traffic when he entered the intersection, the color of the traffic light when he entered the intersection, whether or not he still had his overhead lights and siren engaged when he entered the intersection, the speed of his patrol car when he entered the intersection, evasive action he may have taken to prevent the accident, and any conscious decisions he may have made to continue the pursuit immediately prior to entering the intersection. Without an explanation of what Deputy Ener did to avoid the accident, we are unable to weigh the need against the risk based on Deputy Ener's perception at the time of the event.

Deputy Ener presented other summary judgment proof, consisting of the affidavits of Captain Sumner and Assistant Chief Sadler. Both testified it was reasonable to believe Deputy Ener's need to apprehend the traffic law violator outweighed any risk of harm to the public, and any reasonable police officer would have done the same thing under the same or similar circumstances. However, both Sumner's and Sadler's opinions were based on their examination of the accident report and "other documents," presumably Deputy Ener's affidavit and deposition. As we stated above, these documents do not provide adequate evidence to properly assess Deputy Ener's good faith. Therefore, the affidavits of the other officers are conclusions rather than summary judgment proof.

Deputy Ener's action or inaction during this memory loss could *conclusively* determine if he was acting in good faith. Seven eyewitnesses and the civilian passenger may have been able to supply the missing proof to the summary judgment regarding Deputy Ener's actions prior to the accident, permitting a proper assessment of Deputy Ener's good faith. However, no such evidence is in the record. Accordingly, Deputy Ener has not met his burden of establishing his good faith as a matter of law, and we find material fact issues exist.

### Conclusion

Because Deputy Ener did not provide conclusive evidence that he was performing a discretionary function or acting in good faith under the *Chambers* and *Wadewitz* standards, the burden of proof never shifted to the plaintiffs to rebut the discretionary function and good faith elements of the affirmative defense of official immunity. *See Torres v. Western Cas. & Sur. Co.,* 457 S.W.2d 50, 52 (Tex.1970); *Carter v. Charles,* 853 S.W.2d 667, 672–73 (Tex.App.—Houston [14th Dist.] 1993, no writ). We sustain Brown's points of error that Deputy Ener did not conclusively prove that he was performing a discretionary function or that he was acting in good faith. Because the County's sovereign immunity defense is contingent on Deputy Ener's defense of official immunity, we need not decide whether the trial court should have granted summary judgment for the County. *See Wadewitz,* 951 S.W.2d at 467. We reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.

RICHARD H. EDELMAN, Justice, concurring.

With regard to discretionary duty, *Chambers* states that our focus should be on whether the officer is performing a discretionary function, not whether the officer has discretion to do an allegedly wrongful act while discharging that function. *See City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994) (holding that officers' engaging in

high speed chase was a discretionary act even if it violated the statute prescribing the duty of care for drivers of emergency vehicles). To hold otherwise would mean that police officers could be denied immunity merely for acting negligently. *See id.* I believe that *Chambers* therefore dictates that Ener was performing a discretionary function in engaging in the pursuit in this case even if he did so negligently in violation of department policy.

With regard to good faith, I do not agree with the majority opinion that the elements of good faith must be re-established with regard to each intersection which an officer approaches during a pursuit. Therefore, I do not agree that Ener's inability to recall the details of what occurred in the seconds leading up to this collision is determinative. However, because the movants' affidavits in this case are not legally sufficient under the rationale of *Clark*,[1] and because that decision is binding on this panel (even though I adhere to my dissent from it), I concur with the result reached by the majority.

---

1. *See Clark v. University of Houston,* 979 S.W.2d 707, 712 (Houston [14th Dist.] 1998, pet. filed) (en banc).