**Jim WEATHERBY, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–86–128–CR.**

Court of Appeals of Texas, Eastland.

Oct. 29, 1987.
Rehearing Denied Dec. 3, 1987.

## Opinion

**DICKENSON, Justice.**

The jury convicted Jim Weatherby of felony theft,[1] assessed his punishment at confinement for two years and a $5,000 fine, and recommended probation of both the period of confinement and the fine. One of the conditions of probation was that he make restitution in the sum of $29,308.01 to the complaining witness. Finding the evidence of theft to be insufficient, we reverse the conviction and order an acquittal.

In reviewing the sufficiency of the evidence, we have looked at all the evidence in the light most favorable to the jury's verdict to see if a rational fact finder could find beyond a reasonable doubt that appellant was guilty of the essential elements of the offense. See, e.g., *Houston v. State*, 663 S.W.2d 455 (Tex.Cr.App.1984).

The jury found that appellant intentionally appropriated "by exercising control over" property, to-wit:

(1) $7,024.50 on or about March 19, 1984,

(2) $2,739.87 on or about March 19, 1984,

(3) $9,172.28 on or about March 23, 1984, and

(4) $10,371.36 on or about March 23, 1984,

without the effective consent of the owner, H.K. Sartor, and with intent to deprive the owner of the property. The jury also found that all of the money was obtained pursuant to one scheme and continuing course of conduct. The jury had been instructed that a person commits the offense of theft if he unlawfully appropriates property "with intent to deprive the owner of the property" and that appropriation of property is unlawful "if it is without the owner's effective consent." The jury was also instructed that "deprive" means to withhold property from the owner permanently, or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner, or to dispose of property in a manner that makes recovery of the property by the owner unlikely.

Appellant presents three points of error. He argues that the evidence is insufficient to support a judgment of conviction because the State failed to prove: (1) that appellant intended to permanently deprive the owner of the money, and (2) that appellant unlawfully appropriated the money without the effective consent of the owner. He also argues (3) that the trial court committed reversible error in failing to instruct the jury on the theory of deception. We sustain the second point of error. The other two points become moot and are, therefore, not discussed.

The State's brief "adopts as correct" the first two paragraphs of appellant's "Statement of Facts" as set forth in his brief. These undisputed facts are:

> Appellant was engaged in a cattle feed-lot business known as Comanche

---

1. A second degree felony under TEX. PENAL CODE ANN. sec. 31.03(e)(5)(B) (Vernon Supp. 1987) because "the value of the property stolen is $20,000 or more."

Land and Cattle Company, Inc. The Complainant, H.K. Sartor, entered into an oral agreement with Comanche Land and Cattle Company, Inc. by which said corporation agreed to feed Complainant's cattle.

The agreement was standard in the business whereby Comanche Land and Cattle Company, Inc. would receive Complainant's cattle, "feed-out" the cattle and then sell the cattle at a time agreed upon by the parties. The agreement further provided that Comanche Land and Cattle Company, Inc. would handle the actual sale of the cattle and receive the proceeds of the sale. Subsequently Comanche Land and Cattle Company, Inc. was to subtract from the proceeds any costs owed by the Complainant to Comanche Land and Cattle Company, Inc. for the feed-lot services. The remaining proceeds would then be transferred to the Complainant, the owner of the cattle. It is significant to note that common procedure in the business is that the feed-lot receives the cattle and the proceeds of the sale of such cattle with the full consent of the cattle owner. And this was indeed the agreement and facts in the case at bar.

Other undisputed facts are that when complainant's cattle were sold, the purchasers' checks were sent to appellant. Appellant caused the checks to be deposited into the checking account which was used for all his business activities. At the time those checks were collected and it was time to remit payment to complainant, the checking account was overdrawn. The checks which appellant issued to complainant were returned with the notation: "insufficient funds." Appellant admitted that he was having "severe cash flow problems," and the records indicate that his uncollected accounts receivable at that time greatly exceeded the amount due on the four checks which were returned when complainant deposited them. Appellant was President of Comanche Land and Cattle Company, Inc. until its charter was forfeited on February 20, 1984, because of unpaid franchise taxes.

Complainant agreed that he delivered his cattle to appellant's feedlot with the understanding that appellant would sell the cattle when they were ready, collect the proceeds, deduct any unpaid feed bills or veterinary charges, and remit the balance to complainant.

Two of the State's witnesses were former employees of appellant's company. One of them was the lady who posted the ledgers, and the other was appellant's accountant. Both of them supported appellant's testimony that the complainant's transaction was handled the same way that appellant had been doing business for many years. They had always deposited the checks received for the feedlot customers' cattle in the checking account, waited for the check to clear, and then issued a net check to the customer after deducting any unpaid feed or veterinary charges. Both of these State's witnesses supported their former employer's testimony that he never intended to steal the complainant's money.

The State agreed that it was not relying on the presumption based upon the issuance of insufficient funds checks and that this is "not a theft by check case." The district attorney explained that: "The only purpose of the checks, Your Honor, is just to show the amounts of money." The State's theory is that appellant appropriated the complainant's money when he caused the checks from the cattle buyers to be placed in a checking account which was in an overdraft position.

The only witness who testified that he thought appellant was guilty of theft was the complainant, and he testified as follows on cross-examination:

Q: What evidence do you have to give this Jury as the owner of those cattle that when Mr. Weatherby and Comanche Land and Cattle Company sold those cattle ..., to show that he never intended to pay you the money?

A: He never called me to see about selling them. He told—told me they were in the pen[s]. I got there, they're not there. [Some two or three days of time elapsed between the long distance call and complainant's trip to the feed-

lot.] I'm going to take an assumative approach, something has to be done. I had to do something to stop it, couldn't let him [appellant] sell all of them [cattle] without—I have to work night and day to pay that much money—I tried to put the brakes on, Mr. Glasgow, that's all.

We hold that the evidence is not sufficient to prove that appellant had the criminal intent to unlawfully appropriate his customer's money when he deposited the cattle buyer's checks in his business checking account. The fact that the checking account was overdrawn when complainant's checks were presented for payment is only circumstantial evidence, and it does not rule out all of the other reasonable hypotheses shown by the evidence. There is undisputed proof that accounts receivable which should have been received by appellant's business did not arrive in a timely manner. There is also undisputed proof that appellant was attempting to restructure his company's debts to take care of the cash flow problem. See *Wilson v. State,* 663 S.W.2d 834 (Tex.Cr.App.1984); *Phillips v. State,* 640 S.W.2d 293 (Tex.Cr. App.1982). Since the evidence is insufficient, appellant cannot be tried again because of the "double jeopardy" provision of the Fifth Amendment to the Constitution of the United States. See *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

The judgment of the trial court is reversed, and this Court renders a judgment of acquittal.