The CITY OF EL CAMPO,
Texas, Appellant,

v.

David RUBIO and Pascuala
Torres, Appellee.

No. 13–98–238–CV.

Court of Appeals of Texas,
Corpus Christi.

Nov. 12, 1998.

**944**

Darrell G. Noga, Matthew Roy Scott, Cooper & Scully, Dallas, for Appellant.

Robert Steven Kwok, Robert Kwok & Assoc PC, John C. Maher, Jr., Maher & Serafino, Houston, for Appellee.

Before Justices HINOJOSA, YAÑEZ, and RODRIGUEZ.

## OPINION

RODRIGUEZ, Justice.

This is an attempted appeal[1] from the trial court's denial of the City of El Campo's plea to the jurisdiction and motion for summary judgment based on official immunity. We dismiss in part for want of jurisdiction and affirm.

At approximately midnight on April 16, 1995, David Rubio, his wife Pascuala Torres, and their two children ("the Rubios") were traveling on Highway 59 in El Campo, Texas, when Rubio was pulled over by El Campo Police Officer Mark Biskup. Biskup suspected Rubio was intoxicated because the van was swerving between lanes. Biskup determined Rubio was not intoxicated, but a routine check of his driver's license revealed the license was suspended. Biskup placed Rubio under arrest.

Neither Torres nor the minor Rubio children were licensed to drive. While Biskup denies the allegations, the Rubios claim that Biskup "ordered and instructed Torres to drive the van and offered instruction on how to operate the vehicle by showing her the gas and brake pedals." Biskup also asked whether Elizabeth Torres, a twelve-year-old child, would drive the van back to the police station. The Rubios further alleged that Biskup represented he would activate the emergency flashers on his vehicle to clear the road for Torres.

Claiming she was acting under direct orders from Biskup, and fearful for her and her children's safety due to their location on the highway in the middle of the night, Torres attempted to drive the van and follow Biskup, who was already on the highway and making a U-turn to proceed in the opposite direction. As she pulled onto the highway, the van was struck by an oncoming vehicle, causing Torres severe injury.

The Rubios brought suit against the City claiming negligence, gross negligence, and intentional infliction of emotional distress, and requested exemplary damages. The City answered and thereafter filed a plea to the jurisdiction asserting the facts as set

---

1. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(5), (8)    (Vernon Supp.1998).

forth by the Rubios did not allege the use or operation of a motor-driven vehicle by a governmental employee, nor did their allegations of non-use or misuse of the emergency flashers state a claim under the Texas Tort Claims Act.[2] The City also filed a motion for summary judgment raising Biskup's official immunity. The trial court denied both the plea to the jurisdiction and the motion for summary judgment. This appeal followed.

After the briefs were filed, the Rubios filed a "Supplemental Exhibit to Their Response to Appellant's Brief on Accelerated Appeal." This supplemental exhibit contains excerpts from the deposition of Elizabeth Torres, which allegedly support the Rubios' version of the incident. Claiming the Rubios failed to follow proper appellate procedure in supplementing the record, the City filed a motion to strike the supplemental exhibit. We ordered the motion carried with the case.

At any time before the clerk's record is prepared, any party may designate items to be included in the clerk's record. TEX.R.APP. P. 34(b)(1). Rule 34 also provides that "[i]f a relevant item has been omitted from the clerk's record, ... any party may, by letter, direct the trial court clerk to prepare, certify, and file in the appellate court a supplement containing the omitted item." TEX.R.APP. P. 34(c)(1).

The Rubios neither requested that items be included in the clerk's record, nor did they request the trial court clerk to prepare a supplemental record. Accordingly, the City's motion to strike the Rubios' Supplemental Exhibit is GRANTED. Considering only the documents contained in the clerk's record, we now address the City's issues.

### PLEA TO THE JURISDICTION

The City's first two issues question whether (1) under the facts of this case, the City is immune from liability under the Act, and if so, (2) did the trial court err in denying the City's plea to the jurisdiction.

A plea to the jurisdiction contests the trial court's authority to determine the subject matter of the cause of action. *State*

v. *Benavides*, 772 S.W.2d 271, 273 (Tex. App.—Corpus Christi 1989, writ denied). The plaintiff bears the burden of alleging facts affirmatively showing that the trial court has subject matter jurisdiction. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). When deciding whether to grant a plea to the jurisdiction, the trial court must look solely to the allegations in the petition. *Liberty Mut. Ins. Co. v. Sharp*, 874 S.W.2d 736, 739 (Tex. App.—Austin 1994, writ denied). We take the allegations in the pleadings as true and construe them in favor of the pleader. *Texas Ass'n of Business*, 852 S.W.2d at 446.

We consider the Rubios' pleadings in light of the provisions of the Act, which provide that a governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of his employment if:

(A) the property damage, personal injury or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law....

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997).

### USE OF A MOTOR-DRIVEN VEHICLE

Relying on *LeLeaux v. Hamshire–Fannett Sch. Dist.*, 835 S.W.2d 49 (Tex.1992), the City claims the governmental employee must actually be driving the motor-driven vehicle involved in the accident; therefore, because Biskup was not driving the Rubio vehicle at the time of the accident, there is no waiver of immunity. We disagree.

In *LeLeaux*, a student hit her head on the top of a school bus door. The bus was parked, the motor was off, the bus was empty, and the bus driver was not present when the accident occurred. No school related business was being performed.

---

2. TEX. CIV. PRAC. & REM.CODE ANN. § 101.001 et seq.    (Vernon 1997) ("the Act").

*LeLeaux* did not hold that the vehicle in question had to be driven by a governmental employee, only that a governmental employee "use" or "operate" the vehicle. The supreme court defined "operation" as "a doing or performing of a practical work," and "use" as "to put or bring into action or service; to employ for or apply to a given purpose." *LeLeaux*, 835 S.W.2d at 51. Finding immunity barred LeLeaux's claim, the supreme court held her injury did not arise out of the "use or operation" of a motor driven vehicle, and that the school bus was "nothing more than the place where Monica happened to injure herself." *Id.*

In this case, the Rubios alleged that Biskup instructed Torres on how to drive—he showed her where the gas pedal was, where the brake pedal was, and then ordered her to follow him back to the El Campo police station. The Rubios claim Torres had little or no choice and no control over the situation: she could have driven the vehicle, she could have had her twelve-year-old daughter drive the vehicle, or she could have sat on the side of Highway 59 at midnight with two children until help arrived from Houston.

Rather than *LeLeaux*, we find the allegations in the Rubios's petition more analogous to those in *County of Galveston v. Morgan*, 882 S.W.2d 485 (Tex.App.—Houston [14th Dist.] 1994, writ denied). In that case, Morgan, who was part of a work crew resurfacing a road, was injured when he fell from the raised bed of a dump truck positioned too close to a power line. Galveston County did not own the dump trucks, but its employees supervised the drivers and provided front and rear spotters who signaled the dump truck drivers when to move forward and when to stop. Spotters were necessary because a dump truck driver cannot see what is above him. Part of the spotters' job was to watch for overhead obstructions, such as power lines.

In finding that Galveston County employees "used" or "operated" the dump trucks in question, our sister court held that

> [t]he spotters in question were county employees. They were a necessary part of the job. The spotters told the truck driver when to move forward, how far to move,

when to raise his bed, how far to raise it, when to lower his bed, and when to stop. The movement of the truck and the laying of the gypsum was within the spotters' sole discretion. If a driver moved his truck contrary to the spotters' direction, he could be fired. **Although the spotters were not the drivers of the trucks, the spotters "used or operated" the trucks by exercising complete control over their "use or operation."**

*County of Galveston*, 882 S.W.2d at 490 (emphasis added). The City claims that for the Rubios's allegations to fall within County of Galveston's holding, Biskup would have had to, at a minimum, waved or pointed Torres into the path of the oncoming vehicle. The City, however, ignores the Rubios' pleading wherein they claim Biskup ordered Torres to follow him to the police station. When Biskup pulled out onto the highway, Torres followed him, as ordered. In attempting to distinguish *County of Galveston*, the City claims Torres exercised her own thinking and controlled her own movements on the highway. Again, the City ignores the Rubios' allegations that Torres was acting under "direct orders" from Biskup.

The City claims the facts of this case are more closely akin to those in *City of Columbus v. Barnstone*, 921 S.W.2d 268 (Tex. App.—Houston [1st Dist.] 1995, no writ). In that case, Barnstone was involved in a head-on collision with Ellis, a drunk driver. Prior to the accident, the police had been called to the home of Ellis's mother-in-law where Ellis had arrived, intoxicated, and attempted to obtain possession of her minor children. The police officers questioned Ellis, determined she was in fact intoxicated and warned her not to drive. Ellis assured the officers that she would not leave and her friend, Tina Barten, told them she would take care of Ellis. The officers gave Ellis's car keys to Barten. The officers then left the scene. Despite the officers' warning, Ellis shortly thereafter left her mother-in-law's house driving her car. Ellis drove onto a nearby highway, crossed the center line, and struck an oncoming car driven by Barnstone.

The trial court's denial of the City of Columbus's motion for summary judgment was

reversed; however, the Houston court did not base its decision on the City's claim of immunity under section 101.021 of the Act, but on the police officers' official immunity.[3]

The basis for the holding in *City of Columbus* distinguishes it from the assertions raised by the City in its plea to the jurisdiction. Instead, we find *County of Galveston* persuasive and apply its reasoning here. We conclude that, by exercising control over the Rubio vehicle, Biskup used or operated the vehicle. Accordingly, his conduct falls within the parameters of the Act and the City's immunity is waived.

## USE OF EMERGENCY FLASHERS

■ The Rubios' petition further alleged their damages were caused by Biskup's failure to "activate emergency flashers and clear the road which constitutes 'nonuse' and/or 'misuse' and/or 'omission' **arising from the operation or use of a motor driven vehicle ....**" (Emphasis added). The Rubios' petition did not implicate the use or non-use of tangible personal property. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1997). This limitation in the Rubios' pleading is significant because (1) in determining whether the trial court erred in denying the City's plea to the jurisdiction, we look only to the allegations asserted in the Rubios's live pleading, and (2) it serves to distinguish the City's cited authority, all of which stand for the proposition that allegations of "non-use" of tangible personal property[4] will not support a claim under the Act.[5]

We find the case of *Hitchcock v. Garvin*, 738 S.W.2d 34 (Tex.App.—Dallas 1987, no writ), is directly on point. There, Emily Christine Hitchcock was injured after disembarking a Plano ISD school bus. As she was crossing the street, a passing vehicle struck

the child. As in the present case, the issue raised in *Hitchcock* was whether the plaintiffs alleged a cause of action that arose out of the "operation or use of a motor vehicle." The Hitchcocks alleged the school district was negligent in its operation and use of a motor vehicle by "failing to operate and use warning signals in a timely fashion to indicate to oncoming traffic that the school bus was coming to a stop or had stopped." The record also included Garvin's statement that "there were no flashing lights of any kind illuminated on the bus" when the accident occurred.

The *Hitchcock* court found the "failure to activate the flashers or warning signals of a school bus when children are exiting constitutes an 'act or omission arising from the operation or use of a motor-driven vehicle' as the Act requires." *Hitchcock*, 738 S.W.2d at 37. We see no difference between failing to activate flashers or warning signals on a school bus and failing to activate emergency flashers on a police vehicle. Thus, we hold that the acts allegedly commited by the City and Biskup, which "arose from the operation of a motor-driven vehicle" within the meaning of section 101.021, constituted a waiver of immunity.

The trial court did not err in denying the City's plea to the jurisdiction. Issues one and two are overruled.

## MOTION FOR SUMMARY JUDGMENT

■ In addition to its own immunity, the City asserted that Biskup's official immunity precludes a finding of liability against it pursuant to section 101.021(1)(B) of the Act. Biskup's immunity was raised by the City in its motion for summary judgment. The trial

3. *See City of Houston v. Kilburn*, 849 S.W.2d 810, 812 (Tex.1993) (if the employee is protected from liability under the doctrine of official immunity, then the governmental entity's sovereign immunity remains intact).

4. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1997) (a governmental unit is liable for personal injury caused by a condition or use of tangible personal or real property).

5. *See Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585–86 (Tex.1996) (failure to administer an

injectable rather than oral medication); *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex.1994) (failure to provide medication is a non-use of property that is not actionable); *Marroquin v. Life Management Ctr.*, 927 S.W.2d 228, 231 (Tex.App.—El Paso 1996, writ dism'd w.o.j.) (failure to use locks did not constitute use of tangible property); *Bourne v. Nueces County Hosp. Dist.*, 749 S.W.2d 630, 632 (Tex.App.—Corpus Christi, 1988, writ denied) (failure to use a building did not constitute use of personal property).

court's denial of the motion is the subject of the City's sixth issue.

To prevail on a motion for summary judgment, the movant must show there is no genuine issue concerning a material fact which would entitle the movant to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). A defendant who conclusively negates at least one essential element of a plaintiff's claim or who conclusively establishes all the elements of an affirmative defense is entitled to summary judgment. *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993). However, in reviewing a summary judgment, all evidence is to be construed in favor of the nonmovant, to whom every reasonable inference is allowed and on whose behalf all doubts are resolved. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Hartman v. Urban*, 946 S.W.2d 546, 548 (Tex.App.—Corpus Christi 1997, no writ).

■■ Official immunity is an affirmative defense. *Perry v. Texas A & I Univ.*, 737 S.W.2d 106, 110 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.). Thus, the burden was on the City to establish all elements of the defense. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984).

■■ Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties (2) in good faith as long as they are (3) acting within the scope of their authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994).

To support its motion for summary judgment, the City relied on Biskup's affidavit. The relevant portions of the affidavit are as follows:

2. I am a police officer with the City of El Campo, Texas.

5. Mr. Rubio asked me if I could let him go and I told him that I could not do that. I told Mr. Rubio that I could tow his van or leave it with his wife. After speaking with his wife, Mr. Rubio asked me where we were on the highway. I told him where we were and, at that time, Mr. Rubio again spoke with his wife. After Mr. Rubio finished speaking with his wife, I handcuffed him and placed him in my police car.

6. I then pulled away from the parked van and began traveling West on Divide Street. In doing so, I determined that at the time there was no need for me to activate my emergency flashers. To the best of my knowledge, there is no City of El Campo Police Department policy, rule or regulation governing my use of emergency flashers or lights in this situation. Therefore, my decision not to activate my flashers was left to my discretion based upon my training and experience as a police officer.

At most, this affidavit is some evidence Biskup was acting in the scope of his authority as police officer, and that he may have been performing a discretionary function. The affidavit contains nothing that could be construed as evidence of good faith. No other summary judgment evidence was offered by the City.

In responding to the motion, the Rubios attached excerpts from Biskup's deposition, as well as the deposition of Stacy Mueller, a sergeant with the El Campo Police Department. In his deposition, Biskup stated he could not think of any reasonable officer who would ask an unlicensed driver to drive on Highway 59. Nor could he think of any reasonable officer who would order a twelve-year-old to drive a vehicle. Concerning good faith, the following exchange took place:

Q: And similarly, it would—it would just be inconceivable that you would perform any type of driver's training out on the roadways of Highway 59 at 12:00 midnight on a Saturday night, correct?

A: Very much.

Q: Especially with an unlicensed driver?

A: Correct.

Q: That would just not be in good faith, correct?

A: No, sir.

This testimony expressly negates the element that Biskup was acting in good faith.

Furthermore, Mueller stated in his deposition that if Biskup were to tell Torres that he would turn on his emergency lights so she could follow him, Biskup would be violating City policy and such conduct would take him outside the scope of his authority. This deposition testimony directly conflicts with Biskup's affidavit testimony, thereby creating a fact question on the issue of whether Biskup was acting in the scope of his authority.

The City failed to establish all the elements of Biskup's official immunity as a matter of law. Thus, the trial court did not err in denying the City's motion for summary judgment.

Issue number six is overruled.

In issues three, four, and five, the City raises questions concerning the trial court's denial of its motion for summary judgment relating to the Rubios' causes of action for negligence and intentional infliction of emotional distress and their request for exemplary damages. We have no jurisdiction to consider these issues in this interlocutory appeal, TEX. CIV. PRAC. & REM.CODE ANN. § 51.014 (Vernon Supp.1998), and thus, they are dismissed for want of jurisdiction.

The order of the trial court denying the City's plea to the jurisdiction and the City's motion for summary judgment is AFFIRMED.