NUMBER 13-99-738-CV 



COURT OF APPEALS 

THIRTEENTH DISTRICT OF TEXAS 

CORPUS CHRISTI 

___________________________________________________________________ 



CITY OF ROBSTOWN, NOE GARZA, 

JULIAN OLIVERA, J.B. TALLEY, AND 

JORGE LUIS AGUILAR, Appellants, 



v. 



PRIMITIVO RAMIREZ, INDIVIDUALLY AND 

MICHELLE RAMIREZ, BY AND THROUGH HER 

NEXT FRIEND, PRIMITIVO RAMIREZ, Appellees. 

___________________________________________________________________ 



On appeal from the 214th District Court 

of Nueces County, Texas. 

____________________________________________________________________ 



O P I N I O N 



Before Justices Dorsey, Chavez, and Rodriguez 

Opinion by Justice Rodriguez 



This is an accelerated appeal from the denial of a summary judgment based on the
affirmative defense of immunity. See Tex. Civ. Prac. & Rem. Code Ann. 51.014
(a)(5) (Vernon Supp. 1999). We affirm. 

Appellees Primitivo Ramirez, individually and on behalf of minor Michelle Ramirez, and
Librada Ramirez filed suit against Appellants the City of Robstown (City), several of its
officers, and Jorge Luis Aguilar of the Texas Department of Public Safety(1)
for various torts, violations of rights under the United States and Texas Constitutions,
and claims under the Texas Tort Claims Act arising from the execution of a search warrant.
Appellants filed motions for summary judgment on the grounds of, inter alia,
official and sovereign immunity. The trial court denied the motions. By two issues, the
City and its officers complain the trial court erred in denying their motion for summary
judgment based on the grounds of official and sovereign immunity. By three issues, Aguilar
contends the trial court erred in denying his motions for summary judgment because he was
entitled to qualified and official immunity and because no cause of action exists under
the Texas Constitution for a constitutional tort. 

The summary judgment evidence reveals Officer J.B. Talley of the Robstown Police
Department obtained information from a confidential informant that appellees' son, Arturo
Ramirez, was in possession of cocaine and heroin at appellees' residence. Talley contacted
Officer Jorge Luis Aguilar of the Texas Department of Public Safety for assistance in the
investigation, and Aguilar escorted the informant to the location where the informant had
seen Arturo in possession of the contraband. The informant identified a structure at the
rear of 1010 Ohio Street. 

A search and arrest warrant was subsequently issued to search 1010 Ohio Street, rear,
Robstown, Nueces County for cocaine and heroin. Appellees' actual address, however, was
1013-B Indiana Street. Several Robstown police officers and Aguilar executed the warrant
by entering the back door of appellees's residence, which faced Ohio Street, with their
guns drawn. In executing the warrant, the officers pushed aside Librada Ramirez, an
elderly woman, while she was standing on the porch, and forced their way into the house.
An officer found Primitivo Ramirez, who was married to Librada and was also elderly, in
his bedroom and pointed a gun at him, grabbed his arms, and handcuffed him. Primitivo was
on his bed, and when he attempted to get up, the officer held him down on the bed.
Primitivo was then taken to the kitchen, and the handcuffs were removed. According to
Primitivo, the handcuffs were on him for eight to ten minutes. 

Two officers also entered the bedroom of Michelle Ramirez, who was fourteen years old.
One of the officers pointed his gun at her, and told her not to move. The officer
holstered his gun after Michelle sat on her bed. The officer then told her to close the
curtains because people were looking inside, and she did so. One or both of the officers
searched Michelle's room for approximately ten minutes. The officers never touched her. In
total, the officers searched appellees' home for approximately twenty to thirty minutes
and left the home in a disheveled state. Arturo was not at the premises and no cocaine or
heroin was found. Appellees claim they suffered fright, nervousness, and humiliation as a
result of the search. 

Appellees originally filed suit in the United States District Court for the Southern
District of Texas, which granted partial summary judgment in favor of appellants as to all
federal claims and some state claims. The court dismissed appellees' remaining state
claims without prejudice. The United States Court of Appeals for the Fifth Circuit
affirmed the summary judgment. Appellants bring this interlocutory appeal from the denial
of motions for summary judgment from the 214th Judicial District Court of Nueces County,
Texas. 

The City and its officers, in their first issue, and Aguilar, in his second issue,
contend the trial court erred in denying their motions for summary judgment because the
officers were entitled to official immunity. To prevail in a motion for summary judgment,
the movant has the burden to show there is no genuine issue of material fact and that he
is entitled to judgment as a matter of law. See City of El Campo v. Rubio, 980
S.W.2d 943, 948 (Tex. App.--Corpus Christi 1998, no pet.). This burden may be satisfied by
conclusively establishing all elements of an affirmative defense. See Wornick Co. v.
Casas, 856 S.W.2d 732, 733 (Tex. 1993); City of Pharr v. Ruiz, 944 S.W.2d
709, 712, (Tex. App.--Corpus Christi 1997, no writ). Official immunity is an affirmative
defense. See Rubio, 980 S.W.2d at 948. Consequently, the burden was on appellants
to establish the elements of their affirmative defense. See id. (citing Montgomery
v. Kennedy, 669 S.W.2d 309, 310-11 (Tex. 1984)). In determining whether there is a
genuine issue of material fact precluding summary judgment, we indulge every reasonable
inference in favor of the non-movant and view evidence favorable to the non-movant as
true. See Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex.
1985). 

Employees of the government are entitled to official immunity from suit for the
performance of discretionary duties, that are within the scope of their authority, and
performed in good faith. See City of Lancaster v. Chambers, 883 S.W.2d 650, 653
(Tex. 1994); Ruiz, 944 S.W.2d at 712. We conclude, and the parties do not
contest, that the officers performed discretionary duties in obtaining and executing the
warrant. See City of Coppel v. Waltman, 997 S.W.2d 633, 637 (Tex. App.--Dallas
1998, pet. denied) (officer's search of arrestee is discretionary act); City of
Hempstead v. Kmiec, 902 S.W.2d 118, 121 (Tex. App.--Houston [1st Dist.] 1995, no
writ) (police officers exercise discretion in conducting investigation before seeking
warrant); Closs v. Goose Creek School Dist., 874 S.W.2d 859, 876 (Tex.
App.--Texarakana 1994, no writ) (investigation of criminal activity and execution of
search warrant are generally discretionary acts calling for personal deliberation and
judgment). 

Officials act within the scope of their authority when they discharge duties generally
assigned them. See Chambers, 883 S.W.2d at 658; City of Hidalgo v. Prado,
996 S.W.2d 364, 368 (Tex. App.--Corpus Christi 1999, no pet.). Even if the action is
wrongful or negligent, the official still acts within the scope of his authority. See
Prado, 996 S.W.2d at 368. We conclude that the peace officers acted within the scope
of their authority by obtaining and executing a search and arrest warrant. Thus, the
remaining issue is whether the officers acted in good faith. 

In evaluating good faith, we apply an objective legal reasonableness test, disregarding
the officer's subjective state of mind. See Wadewitz v. Montgomery, 951 S.W.2d
464, 466 (Tex. 1997); City of Lancaster, 883 S.W.2d at 656. An officer acts in
good faith if a reasonably prudent officer, under the same or similar circumstances, could
have believed that the need to take action outweighed a clear risk of harm to the public
in taking the action. See Wadewitz, 951 S.W.2d at 466-67; City of Lancaster,
883 S.W.2d at 656-57. 

When the summary judgment movant satisfies the legal reasonableness test, the
non-movant must controvert that proof by showing that "no reasonable person in the
[officer's] position could have thought the facts were such that they justified [the
officer's] acts." City of Lancaster, 883 S.W.2d at 657; see Geick
v. Zigler, 978 S.W.2d 261, 265 (Tex. App.--Houston [14th Dist.] 1998, no writ). Thus,
there is "an elevated standard of proof for the non-movant seeking to defeat a claim
of official immunity in response to a motion for summary judgment." City of
Lancaster, 883 S.W.2d at 656. 

According to appellees, the officers acted unreasonably in obtaining and executing the
warrant. Specifically, appellees maintain Talley failed to investigate the accuracy of the
information provided by the informant and failed to verify the informant's credibility.
Additionally, appellees assert the search was unreasonable because the warrant contained
an address that was different from their address. Finally, appellees contend the officers
used excessive force in execution of the warrant. 

Appellants urge that appellees are precluded from asserting the warrant was invalid,
under the doctrines of collateral estoppel and res judicata, because a federal
district court and appellate court previously found the warrant valid. As appellants note,
the United States Court of Appeals for the Fifth Circuit affirmed the district court's
granting of summary judgment, and found the warrant was properly issued. See Ramirez
v. City of Robstown, et al., No. 95-40037, slip op. (5th Cir. 1995) (unpublished).
The court also found that, although the warrant misstated appellees' address, it described
their residence with sufficient particularity. Finally, the court concluded that no jury
could have determined the officers exercised anything more than a de minimus use
of force. 

We lack jurisdiction to consider the defenses of res judicata or collateral
estoppel independent of appellants' assertions of immunity. See Tex. Civ. Prac.
& Rem. Code Ann. 51.014 (a)(5) (Vernon Supp. 1999); Cameron County v. Carrillo,
7 S.W.3d 706, 709 (Tex. App.--Corpus Christi 1999, no pet.) (interlocutory appeal is only
available for assertion of immunity, and not other issues advanced in motion for summary
judgment); City of Alamo v. Holton, 934 S.W.2d 833, 836 (Tex. App.--Corpus
Christi 1996, no writ) (review of interlocutory appeal under section 51.014(5) is limited
to merits of immunity defense); Boozier v. Hambrick, 846 S.W.2d 593, 596 (Tex.
App.--Houston [1st. Dist.] 1993, no writ) ("assertion of immunity is the only ground
for summary judgment whose denial we can review under" section 51.014(5)). Although
appellants clearly tie their assertions of res judicata and collateral estoppel
into their arguments for immunity on appeal, they failed to do so in their motions for
summary judgment. In their motion for summary judgment, unlike their brief to this Court,
the City and its officers raised the issues of res judicata and collateral
estoppel in separate paragraphs from their assertion of official immunity. Nowhere within
their discussion of official immunity, did they assert that the trial court should apply
the doctrines of collateral estoppel or res judicata to resolve the issues of the
validity of the warrant or the reasonableness of the officers' use of force. Similarly,
Aguilar did not discuss res judicata or collateral estoppel in the context of
official immunity in his motions for summary judgment. Issues not raised to trial court by
written motion, answer or other response may not considered on appeal as grounds for
reversal. See Tex. R. Civ. P. 166a(c); Abbot Lab., Inc. v. Segura, 907
S.W.2d 503, 507 (Tex. 1995). As the trial court did not have an opportunity to consider
appellants' res judicata and collateral estoppel arguments as part of their
official immunity defense, we may not consider such an argument on appeal. See
Tex. R. Civ. P. 166a(c); Kassen v. Hatley, 887 S.W.2d 4, 13 (Tex, 1994); Benson
v. City of San Antonio, 715 S.W.2d 143, 144-45 (Tex. App.--San Antonio 1986, writ
ref'd n.r.e.) (parties are not permitted to make arguments on appeal that were not made in
summary judgment because it would preclude trial judge from reviewing issues and allow
parties to lay behind the log). Consequently, we must conduct an independent review of
whether the officers exercised good faith. 

Appellants concede the warrant named the wrong address, but assert the warrant
adequately described the premises otherwise, and maintain that the correct residence was
actually searched. The underlying affidavit in this case described the premises as: 

A building used as a dwelling in the 1000 block of Ohio Street, Robstown, Nueces
County, Texas. The dwelling is on the southside of Ohio Street facing North. The dwelling
is white in color. The dwelling is on the same lot with a dwelling that is beige in color
with brown trim and this dwelling has the numbers 1010 on the front of the dwelling. The
suspect dwelling is southwest of 1010 Ohio Street, Robstown, Texas. The address to 1010
Ohio Street, rear, Robstown, Nueces County, Texas to include the dwellings surrounding
curtilage and vehicle(s) on property. 

In support of their motion for summary judgment, appellants provided the affidavit of
Aguilar, who stated appellees' residence had its front door on Indiana Street, and back
door on Ohio Street. The back portion of appellees' residence was where the informant told
Aguilar he had seen Arturo in possession of the contraband. Aguilar further affied that
the residence described in the affidavit was the residence searched. 

Talley stated, by affidavit, that after the search was completed, he verified that the
physical description on the warrant was correct and stated that the informant had directed
the officers to Arturo's parents' home. Talley affied that the description of the home, as
set forth in the warrant, was the residence pointed out to Aguilar as the location where
the informant had seen Arturo in possession of contraband. 

Appellants note that Michelle testified that appellees' house was white and her
neighbor's house had brown trim, consistent with the description in the affidavit. 

Appellants provided summary judgment evidence of the reliability and veracity of the
informant through the affidavit of Talley. Talley stated that based on the informant's
knowledge of street narcotics and his prior credibility, he was able to determine the
informant was reliable. Talley also relied on his personal knowledge in obtaining the
warrant, as he had previously arrested Arturo. Appellants also note that Arturo is
presently serving a twenty year sentence for burglary of a habitation with intent to
commit theft and possession of heroin; thus, Arturo was ultimately found in possession of
heroin, as alleged in the warrant. 

Regarding execution of the warrant, appellants note that Librada stated in a deposition
that the officers did not harm her or treat her roughly. Concerning the allegation that
Librada was pushed when the officers entered the house, Raul Galvan, appellees' expert,
testified by deposition that it is necessary for officers to enter a house as quickly as
possible in conducting a search and arrest warrant. Primitivo testified that none of the
officers were rough on him while they were in his home. However, Primitivo also testified
that the placing of handcuffs on him hurt his hands, arms, and wrist. Talley stated in his
affidavit that many of the officers were uniformed during the search. 

Finally, appellants provided the affidavit of expert Tommy Arp, an officer of the Texas
Department of Public Safety, who stated that a reasonable and prudent officer, under the
same or similar circumstances could have believed that the proper address was named in the
warrant and that the force used by the officers was necessary. Arp stated that the
officers acted upon a valid warrant and that the search was executed in a reasonable and
legal manner. As Arp noted, drug dealers are often violent and frequently armed;
consequently, the officers use of force under the circumstances was justified. 

Appellants' summary judgment evidence clearly established that a reasonably prudent
officer in their position could have believed the facts were such that they justified
their actions in obtaining and executing the search warrant. Accordingly, the burden of
proof shifted to appellees to show that no reasonable person in their positions could have
thought the facts were such that they justified their acts. See City of
Lancaster, 883 S.W.2d at 657. 

In attempting to controvert appellants' summary judgment evidence, appellees noted that
one of the officers admitted knowing appellees; thus, according to appellees, he knew or
should have known Arturo was not residing at their home. Primitivo testified by deposition
that Arturo had not lived at the premises for four to five years. It had been three to
four months since Primitivo had seen him. Michelle testified by deposition that Arturo did
not receive mail at appellees' home. 

Appellees provided summary judgment evidence that one of the officers had previously
used excessive force and was not recommended for rehire, and that another was suspended
because of accusations of shoplifting. 

Appellees relied on the affidavits and depositions of several experts. D. P. Van
Blaricom, former Chief of Police for the City of Bellevue, Washington for approximately
ten years, stated in his affidavit that the search warrant was facially invalid because it
listed the wrong address and failed to describe the place to be searched with
particularity. He noted that the affidavit supporting the warrant incorrectly stated that
Arturo was in charge of and controlled the described premises. Moreover, there was no
evidence that the informant was reliable. For the above reasons, he concluded that the
search of appellees' home was unlawful. 

Van Blaricom opined that Aguilar played a key role in the unlawful search because he
accompanied the informant to the premises, gave the incorrect description of the premises,
and participated in the search. He affied that the force used against appellees was
excessive and objectively unreasonable based on the fact that two of the appellees were
elderly and in poor health, the other appellee was a young girl, two of the appellees were
in bed, and the officers had no reason to believe that appellees presented any threat to
them. According to Van Blaricom, the officers should have given verbal commands, rather
than using force to carry out the search. 

Raul Galvan, a licensed private investigator who was formerly employed by the Corpus
Christi Police Department, concluded the affidavit used to get the warrant was facially
defective because it did not reasonably describe the place to be searched. Galvan examined
the affidavit supporting the warrant and visited the premises in question and concluded,
in his deposition, that the location described in the affidavit was not appellees' house.
This was because the affidavit described the house as to the rear of 1010 Ohio, but
appellees' residence was side by side and not to the rear. According to Galvan, the only
house with a rear building was the one next door to appellees' residence and was white
like the one described in the affidavit. 

In Galvan's opinion, a reasonable and prudent officer would have investigated the
entire property and area before obtaining a warrant. Furthermore, a reasonable officer
would not have believed the affidavit used to obtain the warrant was valid, or that the
information provided by the informant was reliable. Finally, he opined the officers used
excessive and unreasonable force, and that the officers did not need to point their
weapons at a child or elderly person, particularly when the informant did not indicate
there were any weapons at the residence. 

C. Gerard Miller, a licensed attorney in the State of Texas, affied that the warrant
was defective on its face and was unsupported by probable cause based on the fact that the
address was incorrect and because the credibility of the informant had not been
established prior to issuance of the warrant. Miller noted that the affidavit described
the house to be searched as 1010 Ohio Street, rear, but appellee's residence was not to
the rear of 1010 Ohio Street. According to Miller, the officers should have conducted
further surveillance to avoid describing the incorrect address on the affidavit. For
example, the officers could have checked with public utilities to see who was paying the
bills and to determine who was in charge of the premises. The officers also could have
surveyed the premises and talked to neighbors before executing the warrant. Although
Talley had previously arrested Arturo, Miller observed, he had never done so at appellees'
residence. According to Miller, a reasonably prudent police officer would not have
submitted the affidavit to obtain the warrant, and would have known there was not probable
cause to obtain the warrant. Significantly, Miller stated that no reasonable officer could
have had a good faith belief that he was executing a proper affidavit. Finally, Miller
affied that the officers used excessive force. 

Because appellees' controverting evidence is sufficient to raise a fact question on the
issue of good faith, the trial court did not err in denying appellants' motions for
summary judgment on the ground of official immunity. Aguilar's second issue and the City
and its officers' first issue are overruled. 

By its second issue, the City asserts it was entitled to summary judgment on the
grounds of sovereign immunity based on the official immunity of the officers.(2) The Texas Tort Claims Act subjects a governmental entity
to liability for the torts of its employees if "the employee would be personally
liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann.
101.021 (1) (Vernon 1997). Conversely, when a governmental employee is protected from suit
under the doctrine of official immunity, the governmental entity's sovereign immunity
remains intact. See City of Houston v. Kilburn, 849 S.W.2d 810, 812 (Tex. 1993).
A governmental entity is only entitled to appeal from an interlocutory order pursuant to
section 51.014 (5) of the Texas Civil Practice and Remedies Code when its claim of
sovereign immunity is "based on" an individual's assertion of qualified or
official immunity in order for the sovereign. See Id. Because the official
immunity of the individual officers was not established, the City was not derivatively
entitled to sovereign immunity. Appellant City's second issue is overruled. 

In his first issue, Aguilar contends the trial court erred in failing to grant summary
judgment as to appellees' federal claims because the federal district court and appellate
court previously found that appellees' constitutional rights were not violated.
Essentially, Aguilar's argument relies on the doctrines of res judicata and
collateral estoppel. We lack jurisdiction to consider any ground except that of immunity
in an interlocutory appeal under section 51.014(5) of the Texas Civil Practice and
Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. 51.014(5); Holton, 934
S.W.2d at 836; Boozier, 846 S.W.2d at 596. To the extent that Aguilar's argument
on appeal is based on qualified immunity, we are unable to consider it as he did not raise
the issues of res judicata or collateral estoppel within an argument of qualified
immunity in his motions for summary judgment. See Tex. R. Civ. P. 166a(c);
Segura, 907 S.W.2d at 507. Aguilar's first issue is overruled. 

By his third issue, Aguilar complains the trial court erred in failing to grant summary
judgment as to appellees' claims under the Texas Constitution. As Aguilar observes,
several courts have recognized that there is no private cause of action for a violation of
the Texas Constitution.(3) However, we lack jurisdiction to
consider grounds for summary judgment outside of immunity in an interlocutory appeal under
section 51.014(5). See Tex. Civ. Prac. & Rem. Code Ann. 51.014(5);
Holton, 934 S.W.2d at 836. Appellant Aguilar's third issue is overruled. 

We AFFIRM the trial court's denial of the motions for summary judgment. 

NELDA V. RODRIGUEZ 

Justice 



Publish. 

Tex. R. App. P. 47.3. 



Opinion delivered and filed 

this the 31st day of March, 2000. 

1. Appellees also named the Department of Public Safety for the
State of Texas and the State of Texas as defendants in the petition. However, the only
parties appealing the denial of the summary judgment are the officers and the City of
Robstown. According to Aguilar's brief, neither the State of Texas nor the Texas
Department of Public Safety were served, and are therefore not parties to the proceeding. 

2. Our review of the City's claim of sovereign immunity is limited
to its derivative claim of immunity based on the officer's claim of official immunity. We
lack jurisdiction to consider the City's assertion of sovereign immunity against
appellees' claims arising out of the City's performance of a governmental function,
including appellees' allegations of negligent hiring, failure to train, and inadequate
policies. See Tex. Civ. Prac. & Rem. Code Ann. 51.014(a)(5) (Vernon Supp.
1999); Cameron County v. Alvarado, 900 S.W.2d 874, 879 (Tex. App.--Corpus Christi
1995, writ dism'd w.o.j.). 

3. See e.g., City of Beaumont v. Bullion, 896 S.W.2d 143,
147 (Tex. 1995) (noting that Texas has no comparable provision to 42 U.S.C. 1983 and
holding "there is no implied private right of action for damages arising under the
free speech and free assembly sections of the Texas Constitution"); Tutt v. City
of Abilene, 877 S.W.2d 86, 87-89 (Tex. App.--Eastland 1994, writ denied) (finding no
"self-operative creation of a constitutional tort liability"); Bagg v.
University of Tex. Medical Branch at Galveston, 726 S.W.2d 582, 584 n.1 (Tex.
App.--Houston [14th Dist.] 1987, writ ref'd n.r.e) (explaining "there is no state
'constitutional tort'").