**Huey P. HARRIS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 09–99–339 CR.**

Court of Appeals of Texas,
Beaumont.

Submitted Aug. 31, 2000.

Decided Dec. 13, 2000.

Douglas M. Barlow, Beaumont, for appellant.

Charles R. Roach, Dist. Atty., Henry Allen Coe, III, Asst. Dist. Atty., Kountze, for state.

Before WALKER, C.J., BURGESS and HILL, JJ.[1]

## OPINION

HILL, Justice.

Huey P. Harris appeals his conviction by a jury for the offense of theft. The trial court assessed his punishment at two years in state jail, suspended and probated for five years, with a $10,000 fine. Harris was also ordered to pay restitution. On appeal Harris argues in two issues that the evidence is legally and factually insufficient to support the jury's verdict.

We affirm because the evidence is legally and factually sufficient to support the jury's verdict.

---

1. The Honorable John Hill, sitting by assignment pursuant to TEX. GOV'T CODE ANN. § 74.003(b) (Vernon 1998).

■ Harris contends in his first issue that the evidence is legally insufficient to support the jury's verdict. In evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *See Ovalle v. State,* 13 S.W.3d 774, 777 (Tex.Crim.App.2000).

Douglas Ables, a land representative for Texaco, testified that on October 21, 1996, he received a call informing him that someone might possibly be cutting timber on Texaco land in Hardin County, Texas. According to Ables, when he got at or near the area in question, the first person he talked to was a Mr. MacGinnis. He stated that MacGinnis told him that he was cutting timber for Huey Harris. He said that when MacGinnis said he had no deed showing ownership in Harris, he asked MacGinnis if he had a map. He indicated that MacGinnis produced a map that he said he received from Harris, a map that showed areas marked in yellow that MacGinnis was supposed to cut. Ables mentioned that some of the lots that were marked in yellow belonged to Texaco. He testified that Charles MacGinnis and Mac-Logging, MacGinnis's company, while working for Harris, cut timber on lots 24, 25, 26, and 27 of the Nancy Fuller Survey. Ables said that those lots belonged to Texaco.

Charles MacGinnis testified that Harris had told him to cut everything in yellow that was on his map. He said that the next day after Ables had appeared at his job site, Ables met with Harris at the site. MacGinnis indicated that subsequently he stopped the work three times, then resumed it after Harris told him to continue. He said that he hauled away the timber and paid Harris for it. MacGinnis said that according to his map some of the timber that was on the four lots owned by Texaco was cut by his saw hands. He indicated that Texaco had never given him permission to cut there and that Harris had claimed he was the owner of the timber and the land.

Kenneth Parker, a crew chief for a survey team, testified that timber was cut from lots 24, 25, 26, and 27 of the Nancy Fuller survey. He said that when he was there on October 29, 1996, he saw timber that appeared to have been recently cut.

■ We hold that the evidence is legally sufficient to support the conviction. Harris argues that the evidence is insufficient because there was a bona fide dispute as to the ownership of the timber that was actually cut. While there may have been a factual dispute as to whether any timber was cut from Texaco's land, there was no bona fide dispute as to the ownership of any timber that was cut from Texaco's land. Harris relies on several cases, including *Hann v. State,* 771 S.W.2d 731 (Tex.App.—Fort Worth 1989, no pet.); *Bryant v. State,* 627 S.W.2d 180 (Tex.Crim. App.1982); *Cox v. State,* 658 S.W.2d 668 (Tex.App.—Dallas 1983, pet. ref'd); *Weatherby v. State,* 738 S.W.2d 83 (Tex. App.—Eastland 1987, pet. ref'd); *Roper v. State,* 917 S.W.2d 128 (Tex.App.—Fort Worth 1996, pet. ref'd); *Gornick v. State,* 947 S.W.2d 678 (Tex.App.—Texarkana 1997); and *Allsup v. State,* 62 S.W. 1062 (Tex.Crim.App.1901). We have examined all of these cases and find most distinguishable because in each of those cases there was a bona fide dispute as to the ownership of the property that was being stolen. In this case there was no bona fide dispute as to the ownership of Texaco's land nor the timber that was cut from it.

Two of the cases Harris cites were not determined on the basis of a bona fide dispute as to ownership of property. In *Weatherby,* the court held that the evidence was insufficient to support the jury's verdict in a theft case. *Weatherby,* 738 S.W.2d at 84. Weatherby, a feed lot owner, sold the complainant's cattle, with his consent, and received the proceeds as per the agreement. *Id.* at 85. When the checks from the buyer had cleared and it became time for Weatherby to pay the

complainant, his business checking account had become overdrawn. *Id.* Consequently, Weatherby's checks to the complainant were returned marked "Insufficient Funds." *Id.* The State indicated that this was not a theft by check case. *Id.* The court, in holding that the evidence was insufficient, noted that the evidence concerning Weatherby's intent was circumstantial and did not rule out all other reasonable hypotheses shown by the evidence. *Id.* at 86. We do not find this holding to be inconsistent with our holding in this case. Further, we note that circumstantial evidence is no longer insufficient merely because it does not rule out all other reasonable hypotheses. *See Geesa v. State*, 820 S.W.2d 154, 161 (Tex.Crim. App.1991).

In *Roper*, the complainant had an agreement that Roper would sell some hay on his behalf and pay him the proceeds in cash after the deduction of wages that the complainant might owe Roper. *Roper*, 917 S.W.2d at 131. Roper testified that he thought he had the permission to keep the money until the complainant asked for the extra money, if any, that was not part of the back wages that the complainant owed him. *Id.* The complainant denied that Roper was entitled to any more than $100 of the $1600 he had received for the hay. *Id.* The court held that this was a civil contract dispute involving a contract, the terms of which were unclear. *Id.* at 132. The court noted that theft convictions that arise from otherwise civil contractual disputes may warrant reversal for insufficient evidence where there is no evidence supporting the requisite criminal intent. *Id.* We find this case distinguishable because the case at bar does not involve a civil contractual dispute between Harris and Texaco. We overrule Harris's contention as presented in issue one.

■ Harris urges in his second issue that the evidence is factually insufficient to support the jury's verdict. In determining whether the evidence is factually sufficient to support the conviction, we must deter-

mine whether a neutral review all of the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *See Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim.App.2000).

Gary Spears, an employee of the Hardin County Sheriff's Office, testified that he went out "to the location" in response to a report of alleged illegal timber cutting. He said he requested and was shown a deed that showed partial ownership in Harris of some property in the survey. He indicated that he was not able to determine from looking at Harris's deed whether the property, from which the timber was being cut, was the property described in the deed or some other property, but that it was in the general area.

Billy Tomlinson, who was in the oil field service business and trucking business, testified that he accompanied Douglas Ables out to an area in Saratoga where there was a report of timber cutting on Texaco land. He said that when Harris and Ables had a discussion out on the property, Harris said it was his land and designated which part. He acknowledged that he never saw Harris out on the land with a chain saw. He stated that at no time did Harris acknowledge doing anything wrong. He indicated that Harris told him that he had the property surveyed, but did not tell him that the property was flagged.

Douglas Ables testified that it was possible that there were previous cuttings on Texaco tracts 24, 25, 26, and 27 of the Nancy Fuller Survey, from years ago. He acknowledged that on the day he was on the property he did not see Harris, MacGinnis, or anyone else cutting "on this tract" nor did he see such activity on any later date.

Charles MacGinnis testified that Harris told him that all of Texaco's land had been

cleared previously. He related how Harris had taken his lead saw hand, Lynn Marshall, and marked the land or showed him where all the lines were. He indicated that he had walked some of it himself. He stated that there was no big conspiracy between him, Harris, and Lynn Marshall to cut Texaco's timber. He testified that Harris told Texaco that he had the deeds to the land.

Virgil Hussey, Jr., a correctional officer for the Texas Department of Criminal Justice, Institutional Division, who cruises timber on the side, testified that he went out on behalf of Harris to flag the land prior to it being cut. He said that he saw evidence of a surveyor having been on the property before he got there. He indicated that Harris had told him that he had previously surveyed the land.

Tim Parker, a forestry consultant, showed the jury pictures of some timber that was uncut, as well as some that had been cut years before. He showed pictures that showed flagging on the land. He also spoke of observing flagging when he went to the location two years after the cutting was done. He stated that there was newer flagging than what Texaco's surveyors might have done. He concluded that Virgil Hussey put some of the flagging up, that Hussey had flagged it twice. Parker concluded, based upon Harris's tickets and mill tickets, that Harris had been shorted about eight loads.

Gary Lynn Marshall was part of MacGinnis's crew who was cutting timber. He said he saw flags out on the property. He said that Harris showed him the property lines the first day he went out to the property and met him. He recounted that Harris had told him that Texaco owned some land in certain places, although he did not specify exactly where. Marshall emphasized that Harris stressed that he stay off of Texaco's land and to stay off of the neighboring government land. He stated that to his knowledge his cutters did not go across the property line, but that it was possible that some of his hands did. He indicated that even when Texaco showed up, he thought that he and his crew were cutting in the right place, but that they were cutting where they were told. He testified that no one told him to go down there and cut that timber. He urged that it was easy to miss the property line, but that he could not explain how he and his crew missed it. He indicated that there was a possibility that it was his fault the timber was cut.

Huey Harris testified that he showed the property lines to Gary Lynn Marshall. He said that he never highlighted a map in yellow and gave it to anyone. He related that he never saw any of his crews on Texaco property. He indicated that if anyone cut timber on Texaco property that he did not get paid for it. He stated that every time he talked to Texaco he was in the right. Harris testified that part of Texaco's land had previously been clear cut, but that he was not saying that all of it was. He acknowledged that he did not know if somebody cut over some lines. He also said that he was cutting his own timber, that he still believed that he was cutting his own timber. He indicated that he knew the boundary between his property and Texaco's.

We conclude that the evidence is factually sufficient to support the verdict because the proof of guilt is not so obviously weak as to undermine confidence in the jury's determination, and the proof of guilt is not greatly outweighed by contrary proof. We overrule Harris's contention contained in issue two.

The judgment is AFFIRMED.