Opinion filed July 13, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed July 13, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00398-CV 

                                                    __________

 

                                        CITY OF ANSON, Appellant

 

                                                             V.

 

DOROTHY DAVIS JONES HARPER, DONNA D. FITZPATRICK,
BOBBY JOE JONES, ANNIE MARIE JONES SPRUIT, PAULINE JONES MORGAN, REESE DAVIS,
MARY EVELYN HANSON, JAMES ANN RENEAU, TRAVIS W. DAVIS, AUDREY D. HUDSON, AND
COTTONWOOD PETROLEUM COMPANY, Appellees

 



 

                                         On
Appeal from the 259th District Court

 

                                                          Jones
County, Texas

 

                                                    Trial
Court Cause No. 20658

 



 

                                                                   O
P I N I O N








Appellees (Dorothy Davis Jones Harper, Donna D.
Fitzpatrick, Bobby Joe Jones, Annie Marie Jones Spruit, Pauline Jones Morgan,
Reese Davis, Mary Evelyn Hanson, James Ann Reneau, Travis W. Davis, Audrey D.
Hudson, and Cottonwood Petroleum Company), collectively Aplaintiffs,@ filed suit against the City of Anson,
Texas, seeking damages and equitable relief because of the City=s plans to build a municipal solid
waste landfill on land where they own the minerals.  The City filed a plea to the
jurisdiction.  The trial court denied
that motion, and the City filed an interlocutory appeal.  We affirm in part and reverse and render in
part.

                                                              I.
Background Facts

The individual plaintiffs own the mineral estate
of a quarter section of land in Jones County, Texas.  The mineral estate was severed from the
surface estate in a 1942 deed that reserved to grantors:

[A]ll
of the oil and gas or other minerals or the proceeds therefrom which maybe
[sic] found or produced from, under and on the above described premises,
together with the right of ingress and egress for the purpose of developing and
extracting said oil, gas and other minerals and the right to use such part
of the surface of said premises as may be necessary or convenient in the
development and extraction of said minerals@  (emphasis added).

 

The tract is unique because of the presence of a
copper deposit.  Prior to 1940, a
twenty-foot petrified copper log was found on the tract and was donated to the
Smithsonian Museum.  A second log was
donated to the Texas College of Mines and Metallurgy.[1]  Copper-containing geodes are present on the
surface today.

In 2003, the individual plaintiffs executed an
Oil, Gas and Mineral Lease with Cottonwood. 
The lease contained a two-year primary term, with an option for an additional
one year.  Cottonwood ultimately
exercised this option.  Shortly after
executing the original lease, Cottonwood entered into a surface use agreement
with Reid M. Harrell, the surface owner. 
Harrell subsequently executed a warranty deed with vendor=s lien, conveying the surface of the
quarter section to the City.  Harrell=s warranty deed was specifically made
subject to the 1942 mineral reservation.

The City acquired the tract to construct a
municipal solid waste landfill.  The City
filed for a permit with the Texas Commission on Environmental Quality (TCEQ)
and began clearing the entrance and constructing a road.  A complaint was filed with the TCEQ, and the
City stopped its construction activities and removed its equipment.








Plaintiffs filed suit against the City seeking
injunctive relief, a declaratory judgment, damages, and attorney=s fees. 
The City filed a plea to the jurisdiction contending plaintiffs= claims were barred by sovereign
immunity or were not yet ripe.  The trial
court held an evidentiary hearing on the City=s
plea.  Reese Davis, one of the mineral
owners, testified that the City=s
dirt work had damaged their copper deposit. 
He testified that the City had started to build a road and that, while
this road would not prevent the mineral owners from mining the copper, it would
make it more expensive.  He also
testified that the road would not prevent them from drilling an oil well, but
that the operation of a landfill would. 
The trial court denied the City=s
plea, and the City filed an interlocutory appeal to this court pursuant to Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(8) (Vernon Supp. 2005).

                                                                       II.
Issues

The City challenges the trial court=s order denying the plea to the
jurisdiction in three issues.  The City
contends that plaintiffs failed to state a claim for inverse condemnation
because they did not show that the City acted with the intention to exercise
eminent domain power; that plaintiffs have not alleged a presently justiciable
controversy; and that plaintiffs=
claims under the Private Real Property Rights Preservation Act,[2]
for injunctive relief, and for attorney=s
fees are barred by sovereign immunity.

                                                            III.
Standard of Review

A party who sues a political subdivision of the
state, such as a municipality, must establish that the legislature has
consented to the suit.  Tex. Civ. Prac. & Rem. Code Ann. '' 101.001(3)(A) & (B),
101.025 (Vernon 2005); Dep=t
of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999).  Without this consent, governmental immunity
deprives the trial court of subject-matter jurisdiction.  Id. 
Whether a trial court has subject-matter jurisdiction is a question of
law subject to a de novo review.  Mayhew
v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998).  Consequently, we review a trial court=s order denying a jurisdictional plea
based on governmental immunity de novo.  Tex.
Natural Res. Conservation Comm=n
v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002).

 








                                                                   IV.
Discussion

Plaintiffs=
petition asks for a declaratory judgment and an injunction, asserts an inverse
condemnation claim and a cause of action under the Preservation of Private Real
Property Rights Act, and also requests attorney=s
fees.  Plaintiffs contend that, if the trial
court has jurisdiction over any of their claims, it is inappropriate to sustain
a plea to the jurisdiction over the remainder.

Subsequent to oral argument, the supreme court
decided Thomas v. Long, No. 03-0204, 
2006 WL 1043429 (Tex. Apr. 21, 2006). 
That case involved an employment dispute between the Harris County
Sheriff=s Office
and a jailer.  The jailer sought a writ
of mandamus, a temporary restraining order, and damages.  The sheriff contended that the trial court
lacked jurisdiction because the jailer had not exhausted her administrative
remedies.  The jailer made a similar
argument to the one advanced by plaintiffs in this case and contended that,
because the sheriff=s office
had conceded that the trial court had jurisdiction over at least one of her
claims, the trial court was required to deny the entire plea to the
jurisdiction.  The supreme court
disagreed and held that Ait
is proper for a trial court to dismiss claims over which it does not have
subject matter jurisdiction but retain claims in the same case over which it
has jurisdiction.@  Id. at *3.  We will, therefore, address the trial court=s jurisdiction over each of plaintiffs= causes of action.

Plaintiffs bear the burden of establishing
jurisdiction.  Tex. Ass=n of Bus. v. Tex. Air Control Bd.,
852 S.W.2d 440, 446 (Tex. 1993).  When
deciding a plea to the jurisdiction, the plaintiff=s
allegations must be accepted as true, City of El Campo v. Rubio, 980
S.W.2d 943, 945 (Tex. App.CCorpus
Christi 1998, pet. dism=d
w.o.j.), and must be construed liberally in favor of the plaintiff.  Tex. Dep=t
of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004).  The trial court may also consider evidence
when necessary to resolve any jurisdictional issue.  Id. at 223.

A.  Are
Plaintiffs= Claims
Ripe?

The City contends that plaintiffs= claim for inverse condemnation was not
yet ripe because there was not a presently justiciable controversy.  The City relies primarily upon the fact that
its landfill permit application was still pending before the TCEQ.  Plaintiffs respond that their claims are ripe
because the City=s dirt
work has caused actual damage to their copper deposit.








Ripeness is an element of subject-matter
jurisdiction.  State Bar of Tex. v.
Gomez, 891 S.W.2d 243, 245 (Tex. 1994). 
Its genesis is the separation of powers provision in Article II, section
1 of the Texas Constitution.  Mayhew,
964 S.W.2d at 928.  This provision
prohibits courts from issuing advisory opinions because that function is
reserved to the executive branch.  Id.

Texas courts have traditionally relied upon
federal decisions when determining ripeness questions because of their
experience in this area of the law.  Id.  The Fifth Circuit has written that a case is Agenerally ripe if any remaining
questions are purely legal ones; conversely, a case is not ripe if further
factual development is required.@  Monk v. Huston, 340 F.3d 279, 282 (5th
Cir. 2003); see also Texas v. United States, 523 U.S. 296, 300 (1998) (a
claim is not ripe for adjudication if it rests upon contingent future events
that may or may not occur as anticipated).

The Fifth Circuit has twice found that a
controversy over a proposed landfill was not ripe because regulatory approval
of the landfill was still pending.  In Smith
v. City of Brenham, Tex., 865 F.2d 662 (5th Cir. 1989), and Monk,
340 F.3d 279, neighboring landowners filed suit to enjoin further development
of proposed landfills.  In both cases,
permit applications were pending before state agencies.  Because the permit applications were still
pending, the construction and operation of a landfill was merely a possibility;
consequently, plaintiffs had not yet suffered actual damage.  The Fifth Circuit found that the disputes
were not ripe and that the trial courts had no jurisdiction.  Monk, 340 F.3d at 283; Brenham,
865 F.2d at 663-64; see also Hubler v. City of Corpus Christi, 564
S.W.2d 816, 821-22 (Tex. Civ. App.CCorpus
Christi 1978, writ ref=d
n.r.e.) (the anticipated results of a proposed project do not constitute a
present taking).

A similar situation exists in this case.  The City has filed a permit application with
the TCEQ.  This application may or may
not be granted.  Unless and until the
City receives a permit, it cannot construct or operate a landfill.  Plaintiffs acknowledged during oral argument
that there are contingencies because of the permit-application process but
suggested it would be appropriate to allow discovery to continue while the TCEQ
considers the City=s
application.  Subject-matter jurisdiction
is a multiple choice question with only two answers:  yes or no. 
If the trial court does not have jurisdiction to enter a judgment, it
does not have jurisdiction to allow plaintiffs to conduct discovery.








This case is, however, distinguishable from Monk
and Brenham because actual construction had taken place on the
property.  The City had done some
preliminary roadwork and had cleared the property=s
entrance.  Davis testified that this work
had destroyed some of their geodes.  The
trial court entered findings of fact and conclusions of law following the
jurisdictional hearing.  Those findings are
unchallenged by the City.  The trial
court found that the City=s
dirt work had damaged a portion of the copper deposit and had restricted
plaintiffs= right to
use the surface.  What might happen if
the City=s permit
application is approved does not present a ripe controversy, and the trial
court does not have jurisdiction to hear a claim based upon future events.  But, the trial court does have potential
jurisdiction B subject
to the City=s
governmental immunity defense B
to resolve any claim based strictly upon events which have already taken
place.  The City=s
second issue is sustained in part and overruled in part.

B.  Have
Plaintiffs Stated a Claim for Inverse Condemnation?

The City contends that plaintiffs have failed to
state a claim for inverse condemnation because they have not shown that it
acted with the intention of exercising its eminent domain power as contrasted
with its rights as a surface owner. 
Plaintiffs argue that they have pled sufficient facts to state an
inverse condemnation claim because they allege that the City purchased the
surface of their tract, undertook actions which precluded or impaired their
access to the tract=s
minerals, and destroyed some of their geodes.

The Texas Constitution provides that A[n]o person=s
property shall be taken, damaged or destroyed for or applied to public use
without adequate compensation being made, unless by the consent of such person.@ 
Tex. Const. art. I, ' 17. 
            To establish a takings
claim, plaintiffs must prove that (1) the City intentionally performed certain
acts (2) that resulted in a taking of property (3) for public use.  Gen. Servs. Comm=n v. Little-Tex Insulation Co., Inc.,
39 S.W.3d 591, 598 (Tex. 2001).  A taking
for inverse condemnation purposes can occur in three situations: (1) a total
temporary restriction of access; (2) a partial but permanent restriction of
access; or (3) a temporary limited restriction of access caused by an illegal
activity, a negligent performance of a project, or an unduly delayed
project.  City of Austin v. Ave. Corp.,
704 S.W.2d 11 (Tex. 1986).  The
determination of whether a taking has occurred is a question of law.  City of Austin v. Travis County Landfill
Co., 73 S.W.3d 234, 241 (Tex. 2002).








Much of the recent inverse condemnation litigation
concerns when regulations constitute a taking.  See, e.g., Tahoe-Sierra Pres. Council,
Inc. v. Tahoe Reg=l
Planning Agency, 535 U.S. 302 (2002) (moratoria on development in the Lake
Tahoe Basin).  Physical takings do not
present the same challenge to define because they are more amenable to per se
rules.  For example, the Texas Supreme
Court has held that Aphysical
possession@ is
categorically a taking for purposes of the Texas Constitution.  Sheffield Dev. Co. v. City of Glenn
Heights, 140 S.W.3d 660, 669-70 (Tex. 2004); see also United States v.
Pewee Coal Co., 341 U.S. 114, 115 (1951) (when the government physically
takes possession of an interest in property for some public purpose, it has a
categorical duty to compensate the former owner).

The Texas Constitution prohibits three distinct
types of Atakings@ without adequate compensation:  (1) taking, (2) damaging, and (3) destroying
property.  City of Dallas v. Jennings,
142 S.W.3d 310, 313 n.2 (Tex. 2004). 
Plaintiffs do not allege that the City is attempting to mine their
copper or produce their oil and gas. 
Rather, plaintiffs allege the City destroyed geodes on the surface and
impaired their rights to use the surface as may be necessary or convenient to
develop the minerals.  These allegations
implicate the second and third categories of takings.

The City argues that plaintiffs must present
evidence that it intentionally damaged their property for a public purpose,
relying upon Tarrant Reg=l
Water Dist. v. Gragg, 151 S.W.3d 546 (Tex. 2004).  It also relies upon Jennings, 142
S.W.3d at 313-15, for the proposition that plaintiffs must show some objective
indicia of intent to distinguish a takings claim that is compensable from a
negligence claim that is not.  Gragg
involved a sufficiency of the evidence review following a jury trial, and Jennings
involved a summary judgment granted in favor of the City of Dallas.  The court=s
discussion of the elements of a takings claim is controlling on our decision,
but its discussion of the quantum of evidence necessary to establish a claim is
not.  In this case, we are concerned with
the sufficiency of plaintiffs=
pleadings and not the ultimate merits of their claim.  The trial court may consider evidence on
jurisdictional questions, but plaintiffs were not required to produce
sufficient evidence to establish a complete cause of action. 








The Texas Supreme Court has, in recent years,
considered several takings cases that provide guidance on the allegations
necessary to state an inverse condemnation claim.  In Gragg, 151 S.W.3d 546, a regional
water control and improvement district flooded a ranch by opening a reservoir=s floodgates.  In Jennings, 142 S.W.3d 310, the City
of Dallas flooded a home while clearing a clogged sewer main.  In Little-Tex, 39 S.W.3d 591, Texas
A&M and the General Services Commission disputed two contractors= entitlement to additional compensation
for work performed under contract.

The court=s
analysis provides guidance when attempting to distinguish between claims that
give rise to a potential taking from those that do not.  First, when the State acts as a party to a
contract and exercises the same rights as would a private party, it is not
acting as a sovereign, and a takings claim does not lie.  Id. at 599.  Second, the State is not strictly liable
under the takings clause for all intentional actions.  The State cannot have greater liability than
would a private citizen engaging in the same conduct.  Jennings, 142 S.W.3d at 313.  Third, there must be some public benefit
associated with the government=s
action.  Gragg, 151 S.W.3d at
554.  If the damage is merely the
accidental result of the government=s
act or is caused by negligence, there is no taking.  Id. at 555; Jennings, 142
S.W.3d at 313.  However, it is
unnecessary to show that the State intended to cause damage.  If the State knows that a specific act is
causing identifiable harm or that the specific property damage is substantially
certain to result from an authorized governmental action, a takings claim may
lie even if there was no desire to damage the property.  Jennings, 142 S.W.3d at 314.

The City=s
reference to its actions as a surface owner are presumably an attempt to take
advantage of the Little-Tex decision. 
This case is distinguishable. 
First, there is no contract between the City and plaintiffs.  Second, the City is not being held to greater
liability than a private citizen.  The
mineral owner is the dominant estate. Ball v. Dillard, 602 S.W.2d 521,
523 (Tex. 1980). Plaintiffs=
mineral reservation contains unique language giving them greater rights than
are normally possessed by mineral owners. 
Plaintiffs would have a potential cause of action against any surface
owner who damaged their copper deposit or otherwise prevented them from
accessing their minerals.  See, e.g.,
id. (affirming damages awarded to mineral lessee caused by surface owner=s denial of access); Davis v. Devon
Energy Prod. Co., 136 S.W.3d 419, 425-26 (Tex. App.CAmarillo
2004, no pet.) (affirming injunction against surface owners because of their
interference with Devon=s
right to use the surface for oil and gas operations).  Third, the operation of a municipal landfill
is a governmental function.  Tex. Civ. Prac. & Rem. Code Ann. ' 101.0215(a)(6) (Vernon 2005).  Thus, the City=s
actions in connection with the landfill are done as a sovereign and not as a
private landowner.








These factors also distinguish this case from Gragg
and Jennings.  Plaintiffs do not
allege any act of negligence.  Their
pleadings and extrinsic evidence show that the City acquired this tract to
construct a landfill and that it began surface preparations for that
purpose.  The City=s
chain of title establishes that it was on actual notice of plaintiffs= ownership interest.  There is no indication that the City had any
desire or intention to harm plaintiffs; but, unlike Jennings, this is
not an attenuated claim based upon unhappy circumstance.  Plaintiffs=
claim is the direct result of the City=s
dirt work.

It is unnecessary, as the City suggests, that
plaintiffs establish that the City knew geodes were present on the surface or
that its surface activities would damage plaintiffs=
copper deposit.  Nor must plaintiffs show
that a direct benefit flowed to the public from the damage done to plaintiffs= copper deposit.

In Gragg, the public did not benefit from
the fact that the plaintiff=s
ranch was flooded nor did the plaintiff show that the district knew in advance
what damage would be done to the ranch when the floodgates were opened.  The public benefitted because the reservoir=s level was reduced before it
overflowed the dam.  The ranch was
damaged as a direct result of that action.

The same holds true here.  The public benefitted from the City=s dirt work because it was done to help
construct a public landfill.  That work
was done intentionally to alter the surface, which because of the copper
deposit and plaintiffs=
rights under the mineral reservation, arguably caused damage.  Cf. Jennings, 142 S.W.3d at 314
(governmental entities may be liable if they know that a specific act is
causing identifiable harm or that the specific property damage is substantially
certain to result from an authorized governmental action).








Plaintiffs=
allegations and extrinsic evidence, when taken as true[3]
and construed liberally in their favor,[4]
are sufficient to establish a potential takings claim.  The City=s
preparatory dirt work and the plaintiffs=
enjoyment of their mineral estate are potentially conflicting.  To the extent the City=s
actual development of the property as a landfill interferes with
plaintiffs= property
rights, a takings claim is alleged. 
Actual actions would not include the City=s
planning process or permit application activities.  Instead, any takings claim is necessarily
limited to actions physically taken on the property that presently deprive
plaintiffs of their ownership interests. 
The City=s first
issue is overruled to the extent plaintiffs allege a takings claim based upon
actions previously taken on the property. 
The City=s first
issue is sustained to the extent plaintiffs allege a takings claim based upon
the City=s future
plans.

C.  Are
Plaintiffs= Claims
Barred By Governmental Immunity?

The City contends in its third issue that plaintiffs= non-takings claims are barred by
sovereign immunity.  Sovereign immunity
refers to the State=s
immunity from suit and liability.  Fed.
Sign v. Tex. S. Univ., 951 S.W.2d 401, 405 (Tex. 1997).  This immunity extends to divisions of state
government, such as boards, hospitals, and universities.  Lowe v. Tex. Tech Univ., 540 S.W.2d
297, 298 (Tex. 1976).  Political
subdivisions including cities, counties, and school districts are protected by
governmental immunity.  City of
LaPorte v. Barfield, 898 S.W.2d 288, 291 (Tex. 1995).  Sovereign immunity and governmental immunity
are frequently used interchangeably, but they represent distinct concepts.  Harris County v. Sykes, 136 S.W.3d
635, 638 (Tex. 2004); Wichita Falls State Hosp. v. Taylor, 106 S.W.3d
692, 694 n.3 (Tex. 2003).[5]

There is no dispute that the City=s intended use of the land for a
municipal solid waste landfill is a governmental function.  Consequently, plaintiffs must establish a
clear and unambiguous waiver of governmental immunity for each claim asserted
by them.  Fed. Sign, 951 S.W.2d at
405.  Plaintiffs=
petition contains, in addition to an inverse condemnation claim, a request for
a declaratory judgment, a claim under the Private Real Property Rights
Preservation Act, a request for injunctive relief, and a request for attorney=s fees. 
In light of Thomas, 2006 WL 1043429, these claims will be
reviewed separately.

1.  Declaratory
Judgment Action and Request for Attorney=s
Fees








Plaintiffs claim that the legislature waived
immunity for declaratory judgment actions including claims for attorney=s fees in the Uniform Declaratory
Judgments Act, Tex. Civ. Prac. &
Rem. Code Ann. '
37.001 (Vernon 1997), because the statute defines Aperson@ to include municipal
corporations.  Plaintiffs= live pleading asked for a declaratory
judgment to:

!         declare and interpret their rights and
the City=s rights
under the deed severing the mineral estate;

 

!         declare that the operation of a
landfill will prevent them from economically mining their copper deposit; and

 

!         declare that the establishment of a
landfill will constitute a taking.

 

The Declaratory Judgments Act authorizes a person interested in a
deed to have determined any question of construction and obtain a declaration
of their rights, status, or other legal relations.  Tex.
Civ. Prac. & Rem. Code Ann. '
37.004 (Vernon 1997).

Governmental immunity does not bar all declaratory
judgment actions against municipalities. 
See, e.g., Labrado v. County of El Paso, 132 S.W.3d 581, 593
(Tex. App.CEl Paso
2004, no pet.) (allowing declaratory judgment action against El Paso County to
interpret a statute).  But, a declaratory
judgment action may not be used as a means to circumvent governmental immunity
and obtain a monetary judgment.  See,
e.g., Bell v. City of Grand Prairie, Tex., 160 S.W.3d 691, 693 (Tex. App.CDallas 2005, no pet.) (trial court did
not have jurisdiction to consider a declaratory judgment action to establish
that firefighters had been underpaid).








Declaratory judgment actions are also subject to a
ripeness review.  See Firemen=s Ins. Co. of Newark, N.J. v. Burch,
442 S.W.2d 331, 333 (Tex. 1968) (Declaratory Judgments Act does not empower
courts to issue advisory opinions). 
Sister courts have held that a declaratory judgment action is premature
if governmental proceedings which will impact the parties= respective rights remain pending.  In Save Our Springs Alliance v. City of
Austin, 149 S.W.3d 674 (Tex. App.CAustin
2004, no pet), the court held that there was no jurisdiction to grant a
declaratory judgment that a development agreement was invalid because no permit
had yet been issued.  In Texas A &
M Univ. v. Hole, No. 10-04-00287-CV, 2006 WL 1102648 (Tex. App.CWaco April 26, 2006, no pet. h.), the
court held that a declaratory judgment action concerning student disciplinary
proceedings was not ripe because the students had not yet completed the
disciplinary process.  See also Tex.
Ass=n of Bus.
v. Tex. Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993) (the Declaratory
Judgments Act does not enlarge the court=s
jurisdiction but merely provides a procedural device for deciding cases already
within that jurisdiction).

We have previously held that plaintiffs= takings claim was not ripe to the
extent that it relied upon the construction of a landfill because the City had
not yet received a TCEQ permit.  For that
same reason, plaintiffs=
declaratory judgment action is not ripe to the extent it seeks an adjudication
of the parties= rights
if a permit is granted and if the City proceeds with its landfill plans.

The trial court lacks jurisdiction to consider the
remainder of plaintiffs=
declaratory judgment action because it merely restates their takings
claim.  We are obligated to look at the
real nature of the relief sought.  When
the suit primarily seeks monetary damages, a claimant cannot add a declaratory
judgment claim to escape governmental immunity. 
IT-Davy, 74 S.W.3d at 855-56 (parties cannot cast a
breach-of-contract action as a declaratory judgment action to escape sovereign
immunity).  

Plaintiffs do not seek the construction of a
statute or ordinance.  They do make a
general reference to their title and ask for a construction of the parties= respective rights under a deed in
their chain of title.  But, they do not
contend that a dispute exists over the construction of that deed beyond their
claim that the City=s actions
constitute a taking for which they are entitled to compensation.  Consequently, the trial court does not have
jurisdiction to consider plaintiffs=
declaratory judgment action, and the City=s
third issue is sustained to the extent it challenges this cause of action.

2.  Private
Real Property Rights Preservation Act

Plaintiffs allege that the Private Real Property
Rights Preservation Act affords them a cause of action:

[T]o
determine whether the governmental action of the City of Anson, Texas results in a taking under the Act.  Plaintiffs will show that the construction of
the landfill on the above described property will constitute a taking of their
minerals by precluding or severely restricting their right to enter the land
and drill, mine and extract their minerals as is their constitutional and contractual
right.

 








The City argues the Act is inapplicable because it is limited to
actions that have effect in a municipality=s
extraterritorial jurisdiction (ETJ) and that this tract lies outside the City=s ETJ. 
There is no dispute that the Act does not apply to land outside a city=s ETJ, but the City points us to no
evidence in the record establishing the tract=s
location.  We do note that plaintiffs
have not challenged the City=s
statement that the tract is outside the City=s
ETJ.  Thus, there may no longer be any
dispute between the parties about the viability of this claim, but we cannot
sustain the City=s third
issue with the record before us.  Because
we have found previously the trial court has jurisdiction over some of the plaintiffs= claims, the parties and trial court
will have the opportunity to consider this issue further.  The City=s
third issue is overruled to the extent it challenges plaintiffs= cause of action under the Private Real
Property Rights Preservation Act.

3.  Injunctive
Relief

Plaintiffs requested an injunction against the
City preventing it from Aplanning,
constructing, operating or establishing a landfill@
on their tract of land.  The City argues
that any claim plaintiffs might have is for inverse condemnation and that the
relief afforded them for that claim is monetary damages.  The City argues that there is no further
waiver for injunctive relief.

Whether the trial court has jurisdiction to grant
a request for injunctive relief depends upon the nature of the request.  A suit brought to control a governmental
entity=s actions
or to subject it to liability is not maintainable without legislative consent
or statutory authorization.  Dir. of
Dep=t of
Agric. & Env=t
v. Printing Indus. Ass=n
of Tex., 600 S.W.2d 264, 265 (Tex. 1980). 
But, suits against governmental officials who have acted unlawfully or
suits to prevent the occurrence of an unlawful action do not require legislative
or statutory authorization.  Id.

Plaintiffs=
request for injunctive relief falls firmly within the first category because
they specifically seek an injunction prohibiting the City from constructing and
operating a landfill.  Plaintiffs cite no
authority waiving governmental immunity in this instance.  We sustain the City=s
third issue to the extent the trial court found it had jurisdiction to consider
plaintiffs= request
for injunctive relief.

                                 Conclusion








The trial court=s
November 16, 2005 order on the City=s
plea to the jurisdiction is affirmed in part and reversed and rendered in
part.  The trial court has jurisdiction
over plaintiffs= inverse
condemnation claim to the extent this claim is based upon actions that have
caused actual interference with plaintiffs=
property rights and over plaintiffs=
Private Real Property Rights Preservation Act claim.  That portion of the trial court=s order is affirmed.  The trial court does not have jurisdiction
over plaintiffs= inverse
condemnation claim to the extent this claim is based upon future actions or
actions which have not yet caused actual interference.  The trial court also does not have
jurisdiction over plaintiffs=
declaratory judgment action or request for attorney=s
fees.  That portion of the trial court=s order is reversed, and judgment is
rendered for the City.

 

 

RICK STRANGE

JUSTICE

 

July 13, 2006

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.











     [1]The
Texas College of Mines and Metallurgy eventually became Texas Western College
and then the University of Texas at El Paso.





     [2]Tex. Gov=t Code Ann. ' 2007.001 (Vernon 2000).





     [3]See
Rubio, 980 S.W.2d at 945.





     [4]See
Miranda, 133 S.W.3d at 226.





     [5]The
principle distinction between the two is that sovereign immunity bars a
political subdivision=s claims against a state agency and that governmental
immunity does not bar a state agency=s claims
against a political subdivision.  Compare
Tex. Dep=t Transp. v. City of Sunset Valley, 146 S.W.3d 637, 641-44 (Tex. 2004), with Tex.
Workers= Comp. Comm=n
v. City of Eagle Pass/Tex. Mun. League Workers= Comp. Joint Ins. Fund, 14 S.W.3d 801, 803-04 (Tex. App.CAustin 2000, pet. denied).  Anson is a home-rule city.  That does not change the analysis.  The City of Eagle Pass is also a home-rule
city.  See id.